UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE UNENCUMBERED ASSETS TRUST; and ERWIN I. KATZ, LTD., Trustee of The Unencumbered Assets Trust,

Plaintiffs,

v.

JP MORGAN CHASE BANK; BANK ONE, N.A.; CREDIT SUISSE FIRST BOSTON CORP.; CREDIT SUISSE FIRST BOSTON (USA), INC.; CREDIT SUISSE FIRST BOSTON LLC; CSFB USA; DELOITTE & TOUCHE, LLP; KAYE SCHOLER, LLP; PRICEWATERHOUSECOOPERS,LLP; THE BEACON GROUP III-FOCUS VALUE FUND, L.P.; INTERCONTINENTAL INVESTMENT ASSOCIATES; HEALTHCARE CAPITAL L.L.C.; FLOHAZ PARTNERS L.L.C.; SOUTH ATLANTIC INVESTMENTS, L.L.C.; THOR CAPITAL HOLDINGS L.L.C.; KACHINA INC; LANCE K. POULSEN; BARBARA L. POULSEN; DONALD H. AYERS; REBECCA S. PARRETT; and TASK HOLDINGS LTD.,

Defendants.

Civil Action No.: C2-04-1090

Judge James L. Graham

Magistrate Judge Abel

# AMENDED COMPLAINT*

* The sole purpose for this amendment is to assert claims, causes of action and allegations against Kaye Scholer, a new Defendant in the case. These new allegations appear at ¶¶ 22A, 1074-1143. All of the claims, causes of action and allegations asserted in the original Complaint remain unchanged. Plaintiff reserves the right to seek leave to amend the claims asserted herein against all parties in response to any motions to dismiss that are filed.

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

I. INTRODUCTION . . . . . . . . . . 1

II. JURISDICTION AND VENUE . . . . . . . . . . 5

III. PARTIES . . . . . . . . . . 6

A. Plaintiff . . . . . . . . . . 6

B. Defendants . . . . . . . . . . 7

IV. THE NATURE AND OPERATION OF NPF VI AND NPF XII . . . . . . . . . . 11

A. The Limited Purposes of the NPF VI and NPF XII Special Purpose Companies . . . . . . . . . . 11

B. The Limited Role of NPF VI and NPF XII in the National Century Financial Enterprises Group of Affiliated Companies . . . . . . . . . . 12

1. NPF VI and NPF XII Maintained a Corporate Existence Independent from Other NCFE Affiliates . . . . . . . . . . 12

2. The NPF VI and NPF XII Securitization Programs . . . . . . . . . . 14

3. NPF VI and NPF XII Contracted for Certain of Their Functions to Be Performed by the Servicer . . . . . . . . . . 15

C. Prohibitions and Controls Placed on the Programs Under the Master Indentures . . . . . . . . . . 16

1. Restrictions on the Purchase of Eligible Receivables from Non-Affiliated Sellers . . . . . . . . . . 16

2. Credit Enhancements . . . . . . . . . . 19

a. Equity Account . . . . . . . . . . 21

b. Seller Credit Reserve Account . . . . . . . . . . 23

c. Offset Reserve Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

3. Other Controls on Withdrawals and Deposits from Accounts . . . . . . . . . 27

4. Reporting of Account Balances and Other Test Results to Rating Agencies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

a. Specified Equity Account Balance Test . . . . . . . . . . . . . . . . . . . . 30

b. Specified Seller Credit Reserve Report . . . . . . . . . . . . . . . . . . . . 30

c. Specified Offset Reserve Balance Report . . . . . . . . . . . . . . . . . . 31

d. Collateral Coverage Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

e. Receivables Default Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

f. Concentration Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

5. Audit in Conformity with General Accepted Auditing Principles . . . . . 32

6. Trustee Duties in Event that Certain Controls Being Violated . . . . . . . . 33

a. Principal Amortization Events . . . . . . . . . . . . . . . . . . . . . . . . . . 33

b. Rights to Pursue Legal Redress . . . . . . . . . . . . . . . . . . . . . . . . . 34

c. Right to Remove the Servicer . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

d. Indenture Trustees' Duty to Act as They Would in the Conduct of Their Own Affairs . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

V. THE SCHEME TO DEFRAUD, AND THEREBY MISAPPROPRIATE THE ASSETS OF, NPF VI AND NPF XII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

A. Factual Allegations Regarding Chase . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

1. Chase Joins the Scheme to Defraud by Agreeing to Disregard Its Obligations Under the NPF VI Indenture . . . . . . . . . . . . . . . . . . . . . . . 40

B. Chase Operates as Indenture Trustee in Accordance with Its Unlawful Agreement, in Violation of the NPF VI Indenture . . . . . . . . . . . . . . . . . . . . . . . 47

1. Chase Carries Out Transfers and Withdrawals that It Had Actual Knowledge Were Not Permitted Under the Indenture . . . . . . . . . . . . . . . 47

a. Unauthorized Transfers from the NPF VI Equity Account Not on a Monthly Payment Date . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

b. Unauthorized Transfers from the NPF VI Equity Account to the NPF VI Purchase Account, Seller Credit Reserve Account, and Offset Reserve Account . . . . . . . . . . . . . . . . . . . . . 50

c. Unauthorized Transfers from the NPF VI Seller Credit Reserve Account to the NPF VI Equity Account and Offset Reserve Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

d. Unauthorized Transfers from the NPF VI Offset Reserve Account to the NPF VI Seller Credit Reserve Account . . . . . . . 52

2. Chase Fails to Take Required Action in Response to Repeated Events of Default Resulting from the Failure to Maintain the NPF VI Reserve Accounts at the Minimum Balances Required by the Indenture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

a. The NPF VI Reserve Accounts Were Continuously in Default Throughout the Term of Chase's Service as Indenture Trustee55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

b. Chase Had Actual Knowledge that the NPF VI Reserve Accounts Were Not Maintained at their Required Minimum Levels Throughout Its Term of Service as NPF VI Indenture Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

3. Chase Actively and Knowingly Participates in the Interstate Kiting of Funds Between the NPF VI Trust Account Held at Chase and the NPF XII Trust Accounts Held at Bank One . . . . . . . . . . . . . . . . . . . . . . . . 67

4. Chase Accepts Invalid and Improper Investor Reports in Violation of the Terms of the NPF VI Indenture in Order to Facilitate the Kiting Scheme and to Conceal the Conspiracy to Loot the NPF VI Assets . . . . 73

5. Chase Transfers or Withdrawn Funds From the NPF VI Accounts for Purposes that It Knows Are Not Permitted Under the NPF VI Indenture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

a. Ineligible Receivables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

i. Defaulted and Rejected Receivables . . . . . . . . . . . . . . . . 76

ii. "Pro Forma"Receivables . . . . . . . . . . . . . . . . . . . . . . . . 78

b. Affiliated Sellers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

6. Chase's Monetary Reward for Participating in the Scheme to Defraud NPF VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

7. Alternative Pleading of Gross Negligence, Negligence and Breach of Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

C. Factual Allegations Regarding Bank One . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

1. Bank One's Long History with NCFE . . . . . . . . . . . . . . . . . . . . . . . . . 83

2. Bank One Joins the Scheme to Defraud by Agreeing to Disregard Its Obligations Under the NPF XII Indenture . . . . . . . . . . . . . . . . . . . . . . . 84

3. The Mechanics of Bank One's Active Participation in the NPF XII Misappropriation Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

4. Bank One's Unauthorized Withdrawals from the NPF XII Reserve Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

a. Banks One's Improper Withdrawals from the NPF XII Equity Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

b. Bank One's Improper Withdrawals from NPF XII Seller Credit Reserve Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

c. Bank One's Improper Withdrawals from NPF XII Offset Reserve Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

5. Bank One's Active Participation in Routinely Draining NPF XII's Reserve Accounts, Allowing Those Accounts to Remain Consistently at Levels Dramatically Below Those Required by the Indenture, and Its Failure to Take Required Action in Response to These Defaults . . . 102

6. Bank One Actively and Knowingly Participates in the Kiting of Trust Funds Between NPF XII Trust Accounts, Held at Bank One, and NPF VI Trust Accounts, Held at Chase . . . . . . . . . . 111

7. Bank One's Improper Transfers out of the Purchase Account for Ineligible Receivables . . . . . . . . . . 122

8. Bank One's Improper Transactions With NCFE Affiliates . . . . . . . . . . 123

9. Bank One's Failure to Monitor the Servicer's Compliance with the Indenture's Reporting Requirements . . . . . . . . . . 127

10. Bank One Had Much to Lose If NPF XII Wound Down . . . . . . . . . . 129

D. Factual Allegations Regarding the Founders . . . . . . . . . . 131

E. Counts Regarding the Scheme to Defraud and Thereby Misappropriate the Assets of NPF VI and NPF XII . . . . . . . . . . 136

Count I
Federal RICO Enterprise: 18 U.S.C. § 1962(c)
The Operation and Management of NPF VI Enterprise
*Against Poulsen, Ayers, Parrett, and Chase* . . . . . . . . . . 136

Count II
Federal RICO Conspiracy: 18 U.S.C. § 1962(d)
Conspiring to Violate § 1962(c)—The Operation and Management of NPF VI Enterprise
*Against Poulsen, Ayers, Parrett, Chase and Bank One* . . . . . . . . . . 149

Count III
Federal RICO Enterprise: 18 U.S.C. § 1962(c)
The Operation and Management of NPF XII Enterprise
*Against Poulsen, Ayers, Parrett, and Bank One* . . . . . . . . . . 154

Count IV
Federal RICO Conspiracy: 18 U.S.C. § 1962(d)
Conspiring to Violate § 1962(c)—The Operation and Management of NPF XII Enterprise
*Against Poulsen, Ayers, Parrett, Chase and Bank One* . . . . . . . . . . 165

Count V
Ohio Corrupt Practices Act: Ohio Rev. Code §§ 2923.34(B); 2923.32(A)(1)
The Operation and Management of NPF VI Enterprise
*Against Poulsen, Ayers, Parrett, and Chase* . . . . . . . . . . 171

COUNT VI
OHIO CORRUPT PRACTICES ACT: OHIO REV. CODE §§ 2923.34(B); 2923.32(A)(1) Conspiring to Violate § 2923.32(A)(1) - The Operation and Management of NPF VI Enterprise
*Against Poulsen, Ayers, Parrett, Chase and Bank One* . . . . . 184

Count VII
Ohio Corrupt Practices Act: Ohio Rev. Code §§ 2923.34(B); 2923.32(A)(1) The Operation and Management of NPF XII Enterprise
*Against Poulsen, Ayers, Parrett, and Bank One* . . . . . 188

Count VIII
Ohio Corrupt Practices Act: Ohio Rev. Code §§ 2923.34(B);2923.32(A)(1) Conspiring to Violate § 1962(c)—The Operation and Management of NPF XII Enterprise
*Against Poulsen, Ayers, Parrett, Chase and Bank One* . . . . . 201

Count IX
Common Law Conversion
*Against Bank One and Chase* . . . . . 205

Count X
Common Law Fraud
*Against Poulsen, Ayers, Parrett, Bank One and Chase* . . . . . 206

Count XI
Civil Conspiracy
*Against Poulsen, Ayers, Parrett, Bank One and Chase* . . . . . 208

Count XII
Breach of Contract
*Against Bank One and Chase* . . . . . 210

Count XIII
Breach of Fiduciary Duty
*Against Poulsen, Parrett, Ayers, Chase, and Bank One* . . . . . 211

Count XIV
Concert of Action/Knowing Participation in Breach of Fiduciary Duty
*Against Poulsen, Parrett, Ayers, Bank One and Chase* . . . . . 212

Count XV
Aiding and Abetting
*Against Poulsen, Parrett, Ayers, Bank One and Chase* . . . . . . . . . . . . . . . . . . . . . . . . . 213

Count XIV
In the Alternative, Negligence and Gross Negligence
*Against Bank One and Chase* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214

VI. CLAIMS FOR RECOVERY OF TRANSFERS TO FOUNDERS AND THEIR AFFILIATED COMPANIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215

A. The March 1999 Fraudulent Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215

B. The April 1999 Fraudulent Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216

C. The July 1999 Fraudulent Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 217

D. February 2000 Fraudulent Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 218

E. December 22, 2000 and October 28, 2002 Fraudulent Transfers . . . . . . . . . . . 219

F. The March 1999, February 2000, and March 2001 Fraudulent Transfers of E-Medsoft/Med-Diversified Stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 221

G. The April 2001, August 2001, and October 25, 2002 Fraudulent Transfers . . . 222

H. Counts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224

Count XVI
Liability on Promissory Note
*Against Rebecca Parrett and Ayers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224

Count XVII
Breach of Contract
*Against Rebecca Parrett and Ayers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 225

Count XVIII
Avoidable Transfers Under Bankruptcy Code Section 544 and 550
*Against Founders and Affiliated Entities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 225

Count XIX
Avoidable Transfers Under Ohio Rev. Code §§ 1336.04 & 1336.07
*Against Founders and Affiliated Entities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 227

Count XX
Avoidable Transfers Under Ohio Rev. Code §§ 1336.05 & 1336.07
*Against Founders and Affiliated Entities* . . . . . . . . . . 228

Count XXI
Avoidable Transfers Recovery of Unlawful Dividends: Ohio Rev. Code 1701.33(c) & 1701.95(d)
*Against Founders* . . . . . . . . . . 228

Count XXII
Breach of Fiduciary Duty
*Against Founders* . . . . . . . . . . 229

Count XXIII
Unjust Enrichment
*Against Founders* . . . . . . . . . . 230

VII. NOTE ISSUANCE ENTERPRISE . . . . . . . . . . 231

A. CSFB Subverts the Fiduciaries of NPF VI and NPF XII . . . . . . . . . . 236

B. CSFB's Participation in and Concealment of the Receivables Fraud . . . . . . . 242

C. CSFB Understood the Limitations on the Types of Receivables that Could Be Purchased . . . . . . . . . . 243

D. CSFB Understood the Limitations Concerning Withdrawals from the Equity Account . . . . . . . . . . 244

E. The Receivables Fraud and the Fraudulent Conduct of the Servicer, Poulsen, Ayers and CSFB in Causing NPF VI and NPF XII to Issue Additional Debt245 . . . . . . . . . .

F. The Anonymous Letters . . . . . . . . . . 250

G. COUNTS . . . . . . . . . . 271

Count XXIV
Ohio Corrupt Practices Act: Ohio Rev. Code §§ 2923.34(B); 2923.32(A)(1)
*Against CSFB, Poulsen, Ayers and Rebecca Parrett* . . . . . . . . . . 271

Count XXV
Breach of Agency, Breach of Fiduciary Duty, Fraud, Negligent Misrepresentation, and Deepening Insolvency
*Against CSFB* .......... 285

Count XXVI
Concert of Action
*Against CSFB* .......... 290

Count XXVII
Civil Conspiracy
*Against CSFB* .......... 291

Count XXVIII
Professional Negligence
*Against CSFB* .......... 293

VIII. CLAIMS AGAINST THE AUDITORS: PWC AND DELOITTE .......... 294

A. PWC's Audits .......... 297

1. PWC's Initial Audit .......... 297

2. Accounts Receivable .......... 298

3. Indenture Violations .......... 305

4. Related Party Disclosures .......... 308

5. PWC's Agreed-Upon Procedures Reports .......... 309

6. PWC Final Audit .......... 311

7. Transition from PWC to Deloitte .......... 316

B. Deloitte's Audits .......... 317

1. Accounts Receivable .......... 317

2. Indenture Compliance and Reserve Accounts .......... 322

3. Related Party Disclosures .......... 323

4. Deloitte's 2002 Audit Work on NCFE's 2001 Financial Statements . . 325

C. Additional Allegations as to Both Auditors . . . . . . . . . . . . . . . . . . . . . . . . . . . 327

D. COUNTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330

Count XXIX
Deepening Insolvency
*Against Deloitte and PWC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330

Count XXX
Common Law Fraud
*Against Deloitte and PWC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 331

Count XXXI
Aiding and Abetting
*Against Deloitte and PWC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332

Count XXXII
Concert of Action/ Knowing Participation in Breach of Fiduciary Duty
*Against Deloitte and PWC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333

Count XXXIII
Professional Negligence and Negligent Misrepresentation
*Against Deloitte and PWC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334

Count XXXIV
Civil Conspiracy
*Against Deloitte & PWC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 335

IX. ADDITIONAL AVOIDANCE CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 336

A. Claims for Recovery of Transfers to Beacon Fund and Task Holdings . . . . . . . 336

1. Beacon Fund and Task Holdings's Involvement With NCFE . . . . . . . . 336

2. Cash Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337

3. COUNTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 339

Count XXXV
Avoidable Transfers Recovery of Unlawful Dividends: Ohio Rev. Code 1701.33(c)

& 1701.95(d)
*Against Beacon Fund and Task Holdings* . . . . . . . . . . 339

Count XXXVI
Avoidable Transfers Under Bankruptcy Code Section 544 & Applicable State Avoidance Law
*Against Beacon Fund and Task Holdings* . . . . . . . . . . 340

Count XXXVII
Avoidable Transfers Under Bankruptcy Code Section 548
*Against Beacon Fund and Task Holdings* . . . . . . . . . . 341

Count XXVIII
Avoidable Transfers Under Bankruptcy Code Section 547
*Against Beacon Fund and Task Holdings* . . . . . . . . . . 342

Count XXXIX
Recovery of Money or Property Under Bankruptcy Code Section 550
*Against Beacon Fund and Task Holdings* . . . . . . . . . . 343

B. Claims Against CSFB Related to NPF XII Series 2000-4 Variable Funding Note . . . . . . . . . . 343

1. Background . . . . . . . . . . 343

2. COUNTS . . . . . . . . . . 345

Count XL
Avoidable Transfers Under Bankruptcy Code Section 544 & Applicable State Law
*Against CSFB* . . . . . . . . . . 345

Count XLI
Avoidable Transfers Under Bankruptcy Code Section 548
*Against CSFB* . . . . . . . . . . 346

Count XLII
Avoidance of Preferential Transfers Under Bankruptcy Code Section 547
*Against CSFB* . . . . . . . . . . 347

Count XLIII
Recovery of Money or Property Under Bankruptcy Code Section 550
*Against CSFB* . . . . . . . . . . 348

X. CLAIMS AGAINST KAYE SCHOLER . . . . . . . . . . 348

A. Kaye Scholer's Role in Collapse of NPF VI and NPF XII . . . . . . . . . . 348

B. Kaye Scholer Knew About Extensive and Undisclosed Related Party Transactions . . . . . . . . . . 353

C. Kaye Scholer Knew of the Pervasive Indenture Violations in the Programs . . . 357

1. Kaye Scholer's Knowledge of Unsecured "Loans" and Wrongful Purchases of "Future Receivables" . . . . . . . . . . 357

2. Kaye Scholer's Knowledge of Manipulation of Defaulted and Rejected Receivables . . . . . . . . . . 363

3. Kaye Scholer's Knowledge of Equity Account Abuses . . . . . . . . . . 364

D. Kaye Scholer Knew that the Indentures Were Routinely Breached . . . . . . . . . . 364

E. Kaye Scholer Actively Participated with CSFB and Others to Deepen the Insolvency of NPF VI and NPF XII . . . . . . . . . . 365

F. Kaye Scholer's Dual Representation Resulted in a Breach of Loyalty and Breach of Due Care to NPF VI and NPF XII . . . . . . . . . . 367

Count XLIV
Negligence/Professional Malpractice
*Against Kaye Scholer* . . . . . . . . . . 369

Count XLVI
Breach of Fiduciary Duty
*Against Kaye Scholer* . . . . . . . . . . 370

Count XLVII
Concert of Action/Knowing Participation in Breach of Fiduciary Duty
*Against Kaye Scholer* . . . . . . . . . . 371

Count XLVIII
Aiding and Abetting CSFB's Fraud and Deepening Insolvency
*Against Kaye Scholer* . . . . . . . . . . 372

XI. PRAYER FOR RELIEF . . . . . . . . . . 373

UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE UNENCUMBERED ASSETS TRUST; and ERWIN I. KATZ, LTD., Trustee of The Unencumbered Assets Trust,<br><br>Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE BANK; BANK ONE, N.A.; CREDIT SUISSE FIRST BOSTON CORP.; CREDIT SUISSE FIRST BOSTON (USA), INC.; CREDIT SUISSE FIRST BOSTON LLC; CSFB USA; DELOITTE & TOUCHE, LLP; KAYE SCHOLER, LLP; PRICEWATERHOUSECOOPERS,LLP; THE BEACON GROUP III-FOCUS VALUE FUND, L.P.; INTERCONTINENTAL INVESTMENT ASSOCIATES; HEALTHCARE CAPITAL L.L.C.; FLOHAZ PARTNERS L.L.C.; SOUTH ATLANTIC INVESTMENTS, L.L.C.; THOR CAPITAL HOLDINGS L.L.C.; KACHINA INC; LANCE K. POULSEN; BARBARA L. POULSEN; DONALD H. AYERS; REBECCA S. PARRETT; and TASK HOLDINGS LTD.,<br><br>Defendants. | Civil Action No. C2-04-1090<br><br>Judge James L. Graham<br><br>Magistrate Judge Abel |

**AMENDED COMPLAINT**

## I. INTRODUCTION

1. When they began, NPF VI and NPF XII were healthy, solvent, limited purpose companies. They existed for one purpose: to buy bona fide, health care accounts receivable with the proceeds of notes secured by those receivables. To do that, NPF VI and NPF XII appointed agents and trustees to act on their behalf, and they imposed strict limitations on what those agents could,

and *could not*, do in carrying out their business affairs. On the strength of what appeared to be strict controls and a lawful, legitimate business, NPF VI and NPF XII became industry leaders. They issued triple-A rated, money market equivalent, asset backed notes and were hailed in the financial press as the nation's leading securitzers of health care receivables. NPF VI and NPF XII had more than $3 billion in notes outstanding when they suddenly imploded and collapsed into bankruptcy in November of 2002.

2. How did this happen? It happened because the strict controls that NPF VI and NPF XII had imposed in order to protect themselves were deliberately and continuously subverted by the faithless agents they had appointed to act on their behalf. This complaint seeks to remedy that wrongdoing.

3. The Indenture Trustees for NPF VI and NPF XII, JP Morgan Chase Bank and Bank One, each conspired with one another, and with the individual agents of the Servicer whom NPF VI and NPF XII had appointed to act for them, Defendants Lance Poulsen, Donald Ayers and Rebecca Parrett, in a concerted effort to loot these innocent, lawful businesses out of virtually their entire worth. As described below, through a concerted pattern of racketeering activity and interstate kiting, comprised of literally thousands of acts of mail and wire fraud, and through deliberate acts of fraud and breaches of the duties imposed on them, the Indenture Trustees and the Founders foisted upon NPF VI an NPF XII wrongful transfers of their funds totaling over $16 billion, including:

- $728,153,384 in wrongful withdrawals from the NPF VI Equity Account, effected through at least 494 wire transfers;
- $6,619,546,454 in wrongful withdrawals from the NPF XII Equity Account, effected through at least 2,439 wire transfers;

- $4,250,000,000 in funds kited via hundreds of fraudulent, interstate wire transfers from NPF VI at Bank One in Ohio to NPF XII at Chase in New York;

- $4,180,000,000 in funds kited via hundreds of fraudulent, interstate wire transfers from NPF XII in New York to NPF VI in Ohio.

- Billions of dollars of wrongful transfers to purported healthcare providers for fictitious receivables "purchases" much of which was to affiliates of Poulsen and NCFE's Founders.

4. In the end, NPF VI and NPF XII were in debt nearly $3 billion with nothing to show for it, through the willful and wrongful acts of Chase, Bank One, Poulsen, Ayers and Parrett. As a result of this wrongful pattern of racketeering activity, NPF VI and NPF XII were completely destroyed, rendered hopelessly insolvent and ruined.

5. Credit Suisse First Boston independently and deliberately injured NPF VI and NPF XII, as well. CSFB is one of the leading investment banks in the world. It describes itself as the gatekeeper to the financial markets, and touts the fact that it is the world's second leading underwriter of asset backed notes. In NPF VI and NPF XII, CSFB saw two clients it could use to elevate its stature, and from whom it could reap enormous investment banking fees. But CSFB was facing intense business competition, and even the fees it stood to earn from legitimate note issuances were not enough to satisfy its greed. CSFB therefore entered into a corrupt conspiracy with Poulsen and Ayers, whom it knew were fiduciaries to NPF VI and NPF XII, in order to profit them and itself by illegitimate means. In complete disregard of its own fiduciary obligations to NPF VI and NPF XII, and those it knew were owed by Poulsen and Ayers, CSFB first paid a series of unlawful bribes to Ayers, and offered to bribe Poulsen, in exchange for the right to serve as the exclusive investment banker for NPF VI and NPF XII. As a quid pro quo, Poulsen and Ayers then awarded CSFB the exclusive ability to dictate the terms, timing and frequency of note issuances by NPF VI and NPF

XII. Having agreed to exploit and subvert NPF VI and NPF XII for their own benefit, CSFB, Poulsen, Ayers and Parrett then forced NPF VI and NPF XII to issue nineteen separate offerings of notes that they (but not NPF VI and NPF XII) knew to be worthless. They caused these notes to be issued in a consistent pattern, through largely identical offering documents, in deliberate and intentional violation of the Ohio securities laws. CSFB and the Founders did this with the full knowledge that these issuances would not further the legitimate business of NPF VI and NPF XII. Instead, CSFB and the Founders knowingly and wrongfully forced the issuance of these notes simply to load even more debt onto NPF VI and NPF XII, so that there would be even more money for these conspirators to steal, embezzle and loot through illicit fees and unlawful related party transactions.

6. It has been said that, "One deceit needs many others, and so the whole house is built in the air and must soon come to the ground." As we demonstrate below, each of the acts of fraud and deceit perpetrated on NPF VI and NPF XII could not have been accomplished without the willful, knowing agreement of Chase, Bank One, CSFB, Poulsen, Ayers and Parrett.

7. NPF VI and NPF XII were also injured because their auditors, who owed them duties of care, failed to discharge their obligations to prevent–or at a minimum, to report so that it could be remedied--the fraud that was being perpetrated on NPF VI and NPF XII. The conscious indifference of PriceWaterhouseCoopers and Deloitte & Touche, and their woeful negligence, thus enabled the scheme to defraud NPF VI and NPF XII to continue long past the point from which NPF VI and NPF XII could survive it.

8. The Unencumbered Assets Trust is a post-confirmation trust endowed with the power to pursue claims on behalf of a number of entities. Erwin Katz, Ltd., is its trustee. On behalf of NPF VI and NPF XII, the Unencumbered Assets Trust and Katz seek to recover in damages what the

Defendants' wrongful acts destroyed: the value of two lawful businesses, the $3 billion of worthless debt they were forced to incur, the billions of dollars of assets that were looted from them, and the fraudulent transfers and preferences that were made–not for the benefit of NPF VI and NPF XII or their affiliates–but, rather, for the benefit of their faithless agents or for creditors who had no legal right to receive them.

9. This is what happened, and it must be remedied. We explain why in greater detail, below.

## II. JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331; the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(c) & (d) & 1964; 11 U.S.C. § 548 *et seq.*; and 11 U.S.C. § 1334 *et seq.*

11. To the extent Plaintiff pleads causes of action arising under state law, this Court has supplemental subject matter jurisdiction over these causes of action pursuant to 28 U.S.C. §1367. Supplemental subject matter jurisdiction is conferred under 28 U.S.C. § 1367 because (i) this Court has original jurisdiction over this action; and (ii) Plaintiff's state law claims are so related to claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1391(b) for several reasons. First, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because this is a district and division in which a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred. Second, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because this is a district and division in which a substantial part of the property that is the subject of this action is situated. Third,

venue is proper pursuant to 18 U.S.C. § 1965(a) because this is a civil action under 18 U.S.C. § 1965(a) against defendants that reside, are found, have an agent, or transact affairs in this division and district.

## III. PARTIES

### A. Plaintiff

13. On or about November 18, 2002, National Century Financial Enterprises, Inc. ("NCFE Inc."); NPF VI, Inc. ("NPF VI"); NPF X, Inc. ("NPF X"); NPF XII, Inc. ("NPF XII"); and other related entities filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of Ohio, Eastern Division, in a Chapter 11 case jointly administered as Case No. 02-65235. On April 16, 2004, the Court entered its Order Confirming the Fourth Amended Joint Plan of Liquidation of NCFE and Its Debtor Subsidiaries, as Modified (D.I. 2789) (the "Confirmation Order), by which the Court confirmed the Fourth Amended Joint Plan of Liquidation of NCFE and its Debtor Subsidiaries (including NPF VI and NPF XII), as modified (the "Plan"). On April 30, 2004, the Plan became effective by its terms. Pursuant to Section IV.D.4.a of the Plan, substantially all of the unencumbered assets of the Debtors, including their legal claims or causes of action, were transferred to The Unencumbered Assets Trust (the "UAT" or "Trust") free and clear of liens, claims and encumbrances. Erwin I. Katz ("Katz") serves as trustee of the UAT, with authority to act on its behalf, including the assertion of the claims herein. Except for certain of the avoidance actions below or as otherwise expressly stated herein, the claims brought herein are the claims that belonged to NPF VI and/or NPF XII prior to the bankruptcy. Together, Katz and the UAT are referred to as the "Plaintiff."

**B. Defendants**

14. Defendant JP Morgan Chase Bank ("Chase") is a national bank with its principal office in New York City, New York. Defendant Chase continuously and systematically does business in this state. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts carried out in its capacity as an Indenture Trustee of the NPF VI securitization program.

15. Defendant Bank One, N.A. ("Bank One") is a national bank with its principal office in Chicago, Illinois. Defendant Bank One continuously and systematically does business in this state. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts carried out in its capacity as an Indenture Trustee of the NPF XII securitization program.

16. Defendant Credit Suisse First Boston is a Swiss bank. It is organized as a joint stock corporation established under Swiss law. Its head office is in Zurich, Switzerland, and its principal office in New York, New York. It is a wholly owned subsidiary of Credit Suisse Group, one of the world's leading global financial services companies. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

17. Defendant Credit Suisse First Boston (USA), Inc. is a Delaware corporation with its principal place of business in New York, New York. It is a wholly owned subsidiary of Credit Suisse First Boston, and an indirect, wholly owned subsidiary of Credit Suisse Group. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

18. Defendant Credit Suisse First Boston LLC is a Delaware limited liability corporation, which is wholly and indirectly owned by Credit Suisse Group. Credit Suisse First Boston LLC and Credit Suisse First Boston (USA), Inc. operate in the United States under the trade name "Credit Suisse First Boston" and are the entities through which the Credit Suisse Group and Credit Suisse First Boston conduct their investment banking business in the United States. They have committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

19. CSFB USA is the successor in interest to Credit Suisse First Boston Corporation, which served as placement agent for over $3 billion dollars worth of note issuances by NPF VI and NPF XII during the time periods at issue in this Complaint. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

20. Defendants Credit Suisse First Boston, Credit Suisse First Boston LLC, Credit Suisse First Boston Corporation and Defendant Credit Suisse First Boston (USA), Inc. will be referred to collectively as "CSFB" throughout this Complaint.

21. Defendant Deloitte & Touche, LLP ("Deloitte") is a Delaware limited liability partnership with its principal place of business in New York. Deloitte continuously and systematically does business in this state and has partners in this state. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

22. Defendant PriceWaterhouseCoopers, LLP ("PWC") is a Delaware limited liability partnership with its principal place of business in New York. Defendant PWC continuously and systematically does business in this state and has partners in this state. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

22A. Defendant Kaye Scholer LLP ("Kaye Scholer") is a New York limited liability partnership with its principal place of business in New York. Kaye Scholer continuously and systematically does business in this state. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

23. Defendant The Beacon Group III Focus Value Fund, L.P. ("Beacon Fund") is a New York limited partnership with its principal place of business in New York. Beacon Fund continuously and systematically does business in this state. It has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

24. Defendant Intercontinental Investment Associates ("IIA") is a Nevada limited liability company with its principal place of business in Ohio. Its members include Defendants Lance Poulsen, Barbara Poulsen, Donald Ayers, and Rebecca Parrett, several of whom are Ohio residents. IIA has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

25. Defendant Healthcare Capital L.L.C. ("HCC") is a Nevada limited liability company with its principal place of business in Ohio. Its members include Defendants Lance Poulsen, Barbara Poulsen, Donald Ayers, and Rebecca Parrett, several of whom are Ohio residents. HCC has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

26. Defendant Flohaz Partners L.L.C. ("Flohaz") is a is a Delaware limited liability company with its principal place of business in Ohio. Its members include Defendants Lance Poulsen, Barbara Poulsen, Donald Ayers, and Rebecca Parrett, several of whom are Ohio residents.

Flohaz has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

27. Defendant South Atlantic Investments, L.L.C. ("South Atlantic") is an Ohio limited liability company with its principal place of business in Ohio. Its members include Defendants Lance Poulsen, Barbara Poulsen, Donald Ayers, and Rebecca Parrett, several of whom are Ohio residents. South Atlantic has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

28. Defendant Thor Capital Holdings L.L.C. ("Thor") is an Ohio limited liability company with its principal place of business in Ohio. Its members include Defendants Lance Poulsen, Barbara Poulsen, Donald Ayers, and Rebecca Parrett, several of whom are Ohio residents. Thor has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

29. Defendant Kachina Inc. ("Kachina") is an Ohio limited liability company with its principal place of business in Ohio. Its members include Defendants Lance Poulsen, Barbara Poulsen, Donald Ayers, and Rebecca Parrett, several of whom are Ohio residents. Kachina has committed acts in this state from which Plaintiff's claims arise, including a substantial portion of the acts alleged below.

30. Defendants Lance K. Poulsen ("Poulsen") and Barbara L. Poulsen ("Barbara Poulsen") are husband and wife and currently reside in Ohio and/or Florida. Poulsen at all relevant times served as an officer, director and shareholder of NCFE Inc. and certain other affiliates of NCFE Inc. Barbara Poulsen at all relevant times served as secretary, treasurer, and a director of

NCFE Inc. Poulsen and Barbara Poulsen regularly do business in this state and have committed acts within this state from which Plaintiff's claims arise.

31. Defendant Donald H. Ayers ("Ayers") is an individual currently residing in Ohio and/or Florida. Ayers at all relevant times served as an officer, director, and shareholder of NCFE Inc. and certain affiliates of NCFE Inc. Ayers regularly does business in this state and has committed acts within this state from which Plaintiff's claims arise.

32. Defendant Rebecca S. Parrett ("Parrett") is an individual who resides in Maricopa County, Arizona. At all relevant times, Parrett served as an officer, director, and shareholder of NCFE. Parrett regularly does business in this state and has committed acts within this state from which Plaintiff's claims arise.

33. Defendant Task Holdings Ltd. ("Task Holdings") is a British Virgin Islands corporation with its principal place of business in New York, New York. Plaintiff's claims against Task Holdings arise from Task Holdings's activities in this state and the state of New York, and from payments made from this state.

## IV. THE NATURE AND OPERATION OF NPF VI AND NPF XII

### A. The Limited Purposes of the NPF VI and NPF XII Special Purpose Companies

34. NPF VI and NPF XII were special purpose corporations formed under the laws of Ohio.

35. As special purpose corporations, NPF VI and NPF XII were formed for certain limited purposes and with limited authority to take certain actions. In general, as described in greater detail below, NPF VI and NPF XII were formed for the limited purpose of purchasing certain well-defined,

high quality health care accounts receivable and funding those purchases with the proceeds of the issuances of Notes to investors.

36. In particular, according to their Articles of Organization, NPF VI and NPF XII were specifically formed for the limited purposes of:

a. acquiring or disposing certain eligible healthcare accounts receivable related to the provision of health care services;

b. providing (or arranging for the provision of) services necessary for the collection of those accounts receivable;

c. providing (or arranging for the provision of) services necessary for the maintenance of the ownership of those accounts receivable;

d. issuing and selling notes to investors; and

e. engaging in activities necessary to accomplish the purchase of receivables and the issuance of notes to investors.

**B. The Limited Role of NPF VI and NPF XII in the National Century Financial Enterprises Group of Affiliated Companies**

**1. NPF VI and NPF XII Maintained a Corporate Existence Independent from Other NCFE Affiliates**

37. NPF VI's and NPF XII's capital stock was owned by National Century Financial Enterprises, Inc. ("NCFE").

38. NCFE was a company that owned NPF VI, NPF XII, and a number of other affiliated companies. NPF VI and NPF XII were operated independently of NCFE and NCFE's other affiliates. NPF VI and NPF XII maintained their own separate corporate existence apart from NCFE and NCFE's other affiliates.

39. NPF VI and NPF XII were formed as bankruptcy-remote entities such that, if NCFE or any of its affiliates entered bankruptcy, the assets of NPF VI and NPF XII would not be consolidated with the assets of any other bankruptcy estate.

40. To facilitate their independence and bankruptcy-remote status, and in addition to other restrictions placed on them in other agreements as discussed below, NPF VI and NPF XII were:

a. prohibited from becoming involved in the day to day management of any other entity;

b. required to maintain separate corporate records and books of account;

c. required to maintain their assets separately from the assets of any other entity;

d. required to maintain corporate records and books of account separate from any other entity;

e. required to maintain financial statements, books, and records separate from any other entity;

f. prohibited from guaranteeing any other entity's obligations; and

g. prohibited from acting as an agents of any other entity in any capacity.

41. In addition, NPF VI and NPF XII were required to have at least one director that was not a shareholder, director, officer, employee, or affiliate of any shareholder of the Corporation (the "Independent Director").

42. In the absence of the affirmative vote of 100% of the members of the respective Boards of Directors of NPF VI and NPF XII, including the vote of the Independent Director for each company, NPF VI and NPF XII were legally prohibited from engaging in any transaction other than ones stated above. As such, certain of NPF VI's and NPF XII's agents, while having been delegated