UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| The Unencumbered Assets Trust, *et al.*, | : | Case No. C2-04-1090 |
| Plaintiff, | : | Judge Graham |
| v. | : | Magistrate Judge Abel |
| JP Morgan Chase Bank, *et al.*, | : | Defendant The Beacon Group III – Focus Value Fund, L.P.'s Motion To Dismiss The Complaint |
| Defendants. | : | |
| | : | (Oral Argument Requested) |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant The Beacon Group III – Focus Value Fund, L.P. ("Focus Value Fund") respectfully moves this Court for the dismissal of Plaintiff's complaint with respect to all claims asserted against the Focus Value Fund. This Motion is supported by the attached Memorandum in Support and the accompanying Declaration of Lara Turcik with the exhibits thereto.

ULMER AND BERNE LLP

By: /s/ Thomas L. Rosenberg
THOMAS L. ROSENBERG (0024898)
88 East Broad St., Suite 1600
Columbus, Ohio 43215-3581
(614) 229-0000
(614) 229-0023 (facsimile)
E-Mail: trosenberg@ulmer.com

*Trial Attorney for Defendant The Beacon Group III - Focus Value Fund, L.P.*

# MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................ 1

ARGUMENT ........................................ 2

I. PLAINTIFF'S FRAUDULENT CONVEYANCE CLAIMS (COUNTS XXXVI AND XXXVII) ARE FATALLY FLAWED ........................................ 2

A. The Bulk of Plaintiff's Claim Under Bankruptcy Code § 548 (Count XXXVII) is Irretrievably Time Barred ........................................ 2

B. Plaintiff's Claim Under Bankruptcy Code § 544 and Ohio State Law (Count XXXVI) is Deficient ........................................ 3

II. PLAINTIFF'S "PREFERENCE" CLAIM (COUNT XXXVIII) FAILS ........................................ 6

A. The Preference Claim Should Be Dismissed Because There Were No Dividends Paid in the 90 Days Prior to NCFE's Bankruptcy Petition ........................................ 6

B. The "Ordinary Course" Exception Bars The Preference Claim ........................................ 9

III. PLAINTIFF'S CLAIM (COUNT XXXV) UNDER THE OHIO DIVIDEND STATUTE FAILS ........................................ 10

CONCLUSION ........................................ 12

Defendant The Beacon Group III – Focus Value Fund, L.P. (the "Focus Value Fund") submits this memorandum in support of its motion to dismiss the complaint in *The Unencumbered Assets Trust, et al. v. JP Morgan Chase Bank, et al.*, (Case No. 2:04-CV-1090-JLG-MRA) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

In July 1998, the Focus Value Fund made a $40 million preferred stock investment in National Century Financial Enterprises, Inc. ("NCFE") in exchange for an approximately 19% equity position in NCFE. Four years later, in late 2002, the Focus Value Fund, along with the rest of the investment community, first learned that NCFE and its senior management had engaged in a massive fraud causing the demise of NCFE. The Focus Value Fund's $40 million investment is now worthless.

According to the complaint, in the intervening four years (from July 1998 through July 2002), NCFE paid approximately $9.2 million in preferred stock dividends to the Focus Value Fund. The complaint does not dispute the fact that these dividends were paid in accordance with the express terms of NCFE's Amended and Restated Articles of Incorporation (the "NCFE Articles"), which have been on file — and publicly available — with the Secretary of State of Ohio since August 3, 1998. Nor does the complaint dispute that these dividends were paid pursuant to an agreed-upon schedule in accordance with the terms of the July 31, 1998 stock purchase agreement between the Focus Value Fund and NCFE (the "Stock Purchase Agreement").

[1] The UAT filed its "Original Complaint" on November 17, 2004 (Docket No. 1). On January 14, 2005, the UAT filed an "Amended Complaint" (Docket No. 20), for the sole purpose of naming Kaye Scholer as an additional defendant and adding new allegations concerning Kaye Scholer. References herein are to the Amended Complaint and are cited as "Compl. ¶ __."

Despite the fact that NCFE and its senior management stole $40 million from the Focus Value Fund, the Unencumbered Asset Trust (the "UAT") — which, by its own admission, simply stands in the shoes of NCFE — now seeks to recover the dividends paid by NCFE to the Focus Value Fund. Notably, the complaint does not contain a single allegation suggesting that the Focus Value Fund was, or should have been, aware of the fraud at NCFE prior to NCFE's collapse in late 2002. Indeed, notwithstanding its epic proportions (over 350 pages), the complaint does not contain a single allegation suggesting that the Focus Value Fund should have been aware that the dividends it was receiving from NCFE represented anything other than preferred stock dividends paid in the ordinary course pursuant to the NCFE Articles and the Stock Purchase Agreement.

Instead, in the scant six pages it devotes to the Focus Value Fund, the complaint proceeds on several theories of strict liability. Unfortunately, the complaint overreaches in several significant (and fatal) respects, and each count alleged against the Focus Value Fund must be dismissed as a matter of law, as set forth below.[2]

## ARGUMENT

### I. PLAINTIFF'S FRAUDULENT CONVEYANCE CLAIMS (COUNTS XXXVI AND XXXVII) ARE FATALLY FLAWED

#### A. The Bulk of Plaintiff's Claim Under Bankruptcy Code § 548 (Count XXXVII) Is Irretrievably Time Barred

Plaintiff purports to invoke § 548 of the Bankruptcy Code to set aside dividend payments from NCFE to the Focus Value Fund dating back to 1999 — more than three years before NCFE

---

2 Each of the complaint's counts against the Focus Value Fund requires a threshold showing that NCFE was insolvent at the time it paid the contested preferred stock dividends to the Focus Value Fund. The complaint fails to plead a single coherent fact suggesting that NCFE was insolvent at the time the dividends were paid. Thus, each claim against the Focus Value Fund fails. Nonetheless, the Focus Value Fund recognizes that the issue of solvency is intensely factual and not appropriately considered at the pleading stage. In the event that any portion of the complaint survives this motion, the Focus Value Fund reserves its right to raise this issue in an appropriate summary judgment motion upon completion of discovery.

filed its bankruptcy petition on November 18, 2002 (the "Bankruptcy Petition"). *See* Compl. ¶¶ 13, 1027, 1044-45. The complaint wholly ignores the fact that § 548 of the Bankruptcy Code only permits the avoidance of transfers made within the one year preceding the filing of the Bankruptcy Petition. *See* 11 U.S.C. 548(a)(1) ("The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition …") (emphasis added); *see also In re O.P.M. Leasing Services, Inc.*, 32 B.R. 199 (Bankr. S.D.N.Y. 1983) (dismissing § 548 claims where all transactions occurred more than one year before filing of Chapter 11 petition); *In re Gefen*, 35 B.R. 368 (Bankr. S.D. Fl. 1984) (same).

Accordingly, those transfers alleged to have been made prior to November 18, 2001 (*see* Compl. ¶ 1027) — more than one year before the Bankruptcy Petition was filed — are not subject to § 548, and the portion of Count XXXVII that seeks to avoid such payments should be dismissed.[3]

### B. Plaintiff's Claim Under Bankruptcy Code § 544 and Ohio State Law (Count XXXVI) is Deficient

The complaint is vague, at best, regarding the supposed bases for plaintiff's cause of action under Ohio state law (Count XXXVI). Although plaintiff alleges that its Bankruptcy Code § 544 claim arises under the Ohio Uniform Fraudulent Transfer Act, O.R.C. §§ 1336.01-1336.11 (the "UFTA"), it does not specify which provisions of the UFTA it is proceeding under. *See* Compl. ¶¶ 1036-45. However, based on the allegations contained in Count XXXVI, it is

3 To the extent the challenged transfers are payment of antecedent debt — as plaintiff itself correctly contemplates (*see* Compl. ¶¶ 1042, 1048-49) — plaintiff has no cause of action under Bankruptcy Code § 548 or 544 (*see* O.R.C. § 1336.04(A)(2) and § 1336.05(A)) since a transfer in respect of an antecedent debt is an absolute bar to liability under those provisions. *See, e.g., In re Teligent, Inc.*, 2004 Bankr. LEXIS 337, at *16 n.12 (Bankr. S.D.N.Y. March 30, 2004) ("the payment of an antecedent debt is a complete defense to a constructive fraudulent transfer claim"); *In re Luis Elec. Contracting Corp.*, 149 B.R. 751, 758 (Bankr. S.D.N.Y. 1992) ("a transfer made in satisfaction of an antecedent debt does not constitute an avoidable fraudulent transfer").

apparent that plaintiff is not pursuing claims under § 1336.04(A)(1) — it does not allege "actual intent to hinder, delay or defraud" on the part of the Focus Value Fund. *See* Compl. ¶¶ 1036-1043. Rather, plaintiff appears to proceed under § 1336.04(A)(2) and § 1336.05. Plaintiff again overreaches.

**§ 1336.05(B) Is Inapplicable**. Plaintiff invokes Ohio Rev. Code § 1336.05(B) "to the extent that the transfers may be considered to have been made with respect to an antecedent debt." *See* Compl. ¶ 1042. Putting aside for now the issue of whether the preferred stock dividends were payments of an antecedent debt, plaintiff cannot rely on § 1336.05(B) for several independent reasons.

First, a portion of plaintiff's claims is time-barred. Under Ohio law, actions under § 1336.05(B) must be brought within one year of the challenged transfer. *See* Ohio Rev. Code § 1336.09; *see also James v. McCoy,* 56 F. Supp. 2d 919, 929 (S.D. Oh. 1998). An avoidance action cannot be brought under § 544 if it was time-barred by state law at the time the underlying bankruptcy proceeding was commenced. *See, e.g., James*, 56 F. Supp. 2d at 929 (action on transfers occurring more than one year before bankruptcy petition barred by statute of limitations); *Levit v. Spatz (In re Spatz),* 222 B.R. 157, 164-65 (N.D. Ill. 1998) (UFTA actions brought pursuant to § 544 are precluded if state statute of limitations has run at time of bankruptcy filing); *In re Dry Wall Supply, Inc.*, 111 B.R. 933, 936 (D. Col. 1990) (same). Here, any § 1336.05(B) claims relating to transfers that occurred prior to November 18, 2001 were already irretrievably barred by the applicable one-year statute of limitations by the time the Bankruptcy Petition was filed on November 18, 2002. Thus, the transfers alleged to have taken place prior to November 18, 2001 (*see* Compl. ¶ 1027) cannot be avoided under § 1336.05(B).

Second, the Focus Value Fund is not an "insider" under the UFTA, as required by § 1336.05(B). *See, e.g., Prudential Ins. Co. of Am. v. Science Park Ltd. P'shp.,* 106 Ohio App. 3d 823, 829 (Ohio 8th Dist. 1995) (granting summary judgment on § 1336.05(B) claims because payments were not to insider). Ohio Rev. Code § 1336.01(G)(2) defines insiders of a corporate debtor (such as NCFE) to include directors, officers, controlling persons, a partnership in which the debtor is a general partner or the general partner of such a partnership, and a relative of any of the foregoing. There are no allegations in the complaint that the Focus Value Fund falls into any of these categories (and it does not).

Third, the UFTA specifically provides that "[a] transfer is not fraudulent under [§1336.05(B)] . . . if made in the ordinary course of business or financial affairs of the debtor and insider." Ohio Rev. Code § 1336.08(E)(2). Thus, even if the Focus Value Fund did qualify as an NCFE insider (it plainly did not), the preferred stock dividends paid to the Focus Value Fund were made in the ordinary course of business pursuant to the express terms of the NCFE Articles and the Stock Purchase Agreement. *See infra* at 9-10.

Finally, although § 1336.05(B) requires a showing that the alleged insider had "reasonable cause" to believe that the debtor was insolvent, the complaint is utterly devoid of any factual allegations suggesting that the Focus Value Fund had "reasonable cause" to believe, much less actual knowledge, that NCFE was insolvent. All that the complaint proffers are entirely conclusory allegations that the Focus Value Fund "knew or reasonably should have known" (Compl. ¶ 1035) and "had at least reasonable cause to believe" (Compl. ¶ 1042) that NCFE was insolvent. There is not a single factual allegation to support those claims. *See Penny/Ohlmann/ Nieman, Inc. v. Miami Valley Pension Corp.*, 2005 U.S. App. LEXIS 3623, at

*7 (6th Cir. March 4, 2005) (a court must accept factual allegations as true, but "need not accept as true legal conclusions or unwarranted factual inferences").

## II. PLAINTIFF'S "PREFERENCE" CLAIM (COUNT XXXVIII) FAILS

In order to state a preference claim under Bankruptcy Code § 547, the transfer at issue must have been made in payment of an antecedent debt. However, putting aside for now the issue of whether the preferred stock dividends were paid in respect of an antecedent debt, plaintiff's preference claim should be dismissed as a matter of law for two independent reasons, as set forth below.

### A. The Preference Claim Should Be Dismissed Because There Were No Dividends Paid in the 90 Days Prior to NCFE's Bankruptcy Petition

**One-Year Reach-Back Does Not Apply.** Plaintiff's attempt to set aside transfers made in the one year period prior to the filing of the Bankruptcy Petition (*see* Compl. ¶ 1048) is misguided. Bankruptcy Code § 547(b) permits the avoidance of transfers made up to one year prior to a debtor filing for bankruptcy only if the transfer is made to an "insider" of the debtor. *See* 11 U.S.C. § 547(b)(4)(B)). Plaintiff baldly asserts that the Focus Value Fund is an "insider" under 11 U.S.C. § 101(31) (*see* Compl. ¶ 1047). However, no well-pled facts (as compared to unsubstantiated assertions) in the complaint suggest that the Focus Value Fund was an insider of NCFE at any time.

Although Count XXVII is not a model of clarity, plaintiff's assertion that "[i]n or about July 1998, Beacon Fund purchased approximately 20% of the equity in NCFE" (Compl. ¶ 1022) (emphasis added) appears to be an attempt at classifying the Focus Value Fund as an "affiliate"

— and therefore supposedly an insider — of NCFE under 11 U.S.C. § 101(31)(E).[4] That attempt is unavailing.

First, as is pertinent here, the Bankruptcy Code defines an affiliate of a debtor as an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." 11 U.S.C. § 101(2)(A) (emphasis added). This is a "restricted and precise definition." *In re Uvas Farming Corp.*, 89 B.R. 889, 892 (Bankr. D.N.M. 1988) (*citing In re Missionary Baptist Foundation, Inc.*, 712 F.2d 206, 211 (5th Cir. 1983)). In order to meet the definition, plaintiff was required to factually allege that the Focus Value Fund owned at least 20% of NCFE's voting stock: simply asserting that the Focus Value Fund owned "approximately 20%" (Compl. ¶ 1022) is insufficient — approximations are not the standard here, specific percentages are. *See Agresti v. EBAR East (In re Elephant Bar Restaurant)*, 196 B.R. 747, 751 (Bankr. D. Pa., 1996) (where pleading did not establish defendant as a holder of 20% of the equity of the debtor, it "simply [did] not fulfill the technical requirements embodied in the Bankruptcy Code's definition of 'affiliate'").[5]

Precision is not too much to ask of this plaintiff. As NCFE's successor, plaintiff has all the information necessary to determine the exact amount of the Focus Value Fund's holding in NCFE. Plaintiff has unfettered access to NCFE's corporate documents (indeed, it has publicly acknowledged to this Court that it holds over a million pages of NCFE documents) and it has

4 The Bankruptcy Code defines an insider of a debtor corporation as a: "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; (vi) relative of a general partner, director, officer, or person in control of the debtor" (11 U.S.C. § 101(31)(B)); or as "an affiliate, or insider of an affiliate as if such affiliate were the debtor" 11 U.S.C. § 101(31)(E); or "a managing agent of the debtor" (11 U.S.C. § 101(31)(F)).

5 Even under "[t]he liberal standard for Fed. R. Civ. P. 12(b)(6) dismissals. . . bare assertions of legal conclusions will not satisfy federal notice pleading requirements." *Debevec v. GE*, 1997 U.S. App. LEXIS 21630, at *7-8 (6th Cir. Aug. 12, 1997) (pleadings which contain only unsupported conclusions are insufficient to withstand a motion to dismiss); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)").

filed numerous schedules detailing NCFE's financial transactions to the penny. Plaintiff's refusal to detail the Focus Value Fund's holdings speaks volumes — there are no facts to suggest that the Focus Value Fund actually held 20% or more of NCFE's equity.

Indeed, sworn papers filed in support of the Bankruptcy Petition by NCFE — in whose shoes plaintiff now stands — show that the Focus Value Fund held only 16.9% of NCFE's voting securities at the time of the Bankruptcy Petition. *See* Ex. 1 to the accompanying Declaration of Lara Turcik, dated March 31, 2005 ("Turcik Declaration") (List of Equity Security Holders, dated November 18, 2002).[6] It is elementary that the doctrine of judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment." *Carroll v. United Compucred Collections, Inc.*, 2005 U.S. App. LEXIS 3474, at *6 (6th Cir. March 2, 2005).

Moreover, the Focus Value Fund's stake in NCFE at the time of its initial investment in July 1998 has no relevance to its holdings at the time the challenged transfers were made in 2001 and 2002. *See* 11 U.S.C. §547(b) ("Plaintiff may avoid any transfer ... to or for the benefit of a creditor ... between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider") (emphasis added); *Dent v. Martin*, 86 B.R. 290, 292 (S.D. Fla., 1988) ("the existence of an insider relationship before the date of the challenged transfer is not the proper test to be applied under the preference section. The language of section 547(b)(4)(B) clearly states that an insider relationship is to be determined on the exact date of the challenged transfer.") (emphasis in original) (citations omitted).

---

6 According to that NCFE filing, the Focus Value Fund held only 4,324.32 shares of the 25,504.9 aggregate outstanding shares of NCFE stock. The fact that the Focus Value Fund held Series A convertible stock is of no consequence here. Each share of Convertible Preferred Stock was entitled to only one vote, as was each share of common stock. *See* Exhibit A to the NCFE Articles at 5 (Turcik Declaration Ex. 2).

**90-Day Reach-Back Period Applies.** In the absence of any facts showing that the Focus Value Fund was an insider of NCFE, only transfers made in the 90-day period preceding the Bankruptcy Petition (August 18, 2002 – November 18, 2002) are avoidable under § 547. *See* 11 U.S.C. § 547(b)(4)(A). As the complaint does not allege that NCFE made any transfers to the Focus Value Fund during that period, plaintiff's invocation of § 547 is baseless. Count XXVII should be dismissed.

B. **The "Ordinary Course" Exception Bars The Preference Claim**

Even if the Focus Value Fund was somehow an insider of NCFE (it was not) and the one-year reach-back period applied (it does not), plaintiff's preference claim should nonetheless be dismissed for the wholly independent reason that the preferred stock dividends paid to the Focus Value Fund are insulated from avoidance under the "ordinary course of business" exception established by Bankruptcy Code § 547(c)(2). Pursuant to the ordinary course exception, a transfer is exempt if it was:

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtors and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and transferee; and (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2)(A)-(C). As the Sixth Circuit has explained, the relevant factors to be considered are the history of the parties' dealings, the timing and amounts of the transfers, and the circumstances of the transaction. *See In re Tennessee Chemical Co.*, 112 F.3d 234, 237 (6th Cir. 1997).

As noted, in July 1998, the Focus Value Fund invested $40 million in NCFE, a transaction embodied in the Stock Purchase Agreement. *See* Compl. ¶ 1027. Pursuant to the express terms of the NCFE Articles and the Stock Purchase Agreement, each share purchased by the Focus Value Fund was to accrue dividends on a daily basis at a per annum rate as set forth in

those documents, and the Focus Value Fund received the right to dividend payments as they were declared. *See* Turcik Declaration Ex. 2 (NCFE Articles at Ex. A; p.5); Ex. 3 (Stock Purchase Agreement at Ex. A; p.5).[7] Here, the challenged transfers were nothing more than the dividend payments provided for in the NCFE Articles and the Stock Purchase Agreement. *See* Compl. ¶ 1027.[8]

Where, as here, the transfers were made on a scheduled basis in accordance with the terms of the NCFE Articles and the prior contractual agreement between NCFE and the Focus Value Fund, they clearly were made in the ordinary course of the financial affairs of the parties. *See Kleven v. Household Bank*, 334 F.3d 638, 642-43 (7th Cir. 2003) (finding that transfers pursuant to a contract qualified for ordinary course protection because "[i]n the absence of modifying behavior, we see no reason why we should not look to the terms of the parties' agreement in order to determine their ordinary course of business"). Accordingly, the ordinary course exception bars the plaintiff's preference claim, which should be dismissed.

## III. PLAINTIFF'S CLAIM (COUNT XXXV) UNDER THE OHIO DIVIDEND STATUTE FAILS

Plaintiff seeks to recover dividend payments to the Focus Value Fund pursuant to Ohio Rev. Code § 1701.95(D), on the grounds that these payments were allegedly made contrary to Ohio law. Ohio Rev. Code § 1701.95(D) provides: "A shareholder who knowingly receives any dividend, distribution, or payment made contrary to law or the articles shall be liable to the corporation for the amount received by that shareholder that is in excess of the amount that could have been paid or distributed without violation of law or the articles" (emphasis added). While there is limited caselaw interpreting § 1701.95(D), Ohio courts uniformly hold that where a

7 *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (on motion to dismiss, court may consider documents referenced in the complaint).

8 Although the ordinary course exception frequently presents factual issues, here all of the relevant facts are laid out in the complaint (*see* Compl. ¶¶ 1022, 1027) and documents referenced therein.

statute uses the word "knowingly," the statute requires a showing of actual knowledge, as opposed to constructive knowledge. *See STJ Entm't L.L.C. v. Liquor Control Comm'n*, 2001 Ohio 3940 (Ohio Ct. App. 2001) (constructive knowledge is insufficient where statute proscribes "knowing" conduct).[9]

Here, the complaint does not contain any factual allegations suggesting that the Focus Value Fund "knew" that the dividends were being paid contrary to law. Of course, failure to plead factual allegations which support the state of mind generally averred mandates dismissal of the claim. *See Tafoya v. Bobroff*, 865 F. Supp. 742, 747 (D.N.M. 1994) (granting motion to dismiss where plaintiff alleged that the defendant acted with "reckless disregard" or "deliberate indifference" but "the facts in plaintiffs complaint simply do not support such an allegation") (cited with approval by *Minger v. Green*, 239 F.3d 793, 801 (6th Cir. 2001); *Hughley v. Downton*, 1987 U.S. App. LEXIS 2522, at *2 (6th Cir. Feb. 25, 1987) (affirming dismissal of claim where plaintiff "offered no factual support for his conclusion that [plaintiff] knew about the contemplated disciplinary actions in advance"). Accordingly, because the complaint does not contain any factual allegations that the Focus Value Fund received the dividends with actual knowledge that they were paid "contrary to law," it does not state a claim under 1701.95 (D) and Count XXXV claim should be dismissed.[10]

---

9 Accordingly, plaintiff's allegation in the alternative that the Focus Value Fund "reasonably should have known that they were receiving the transfers when NCFE was insolvent or would have been rendered insolvent by the transfers" is insufficient to state a claim under 1701.95(D). Although plaintiff claims that the payments were contrary to law in that they were made in violation of Ohio Rev. Code 1701.33(C), the mere violation of 1701.33 (there were none here) does not create any liability on the part of the <u>recipient</u> of the dividend absent the recipient's actual knowledge of the violation. In any event, the factual allegations in the complaint do not even support the conclusion that the Focus Value Fund "should have known" that NCFE was insolvent.

10 Because plaintiff has not stated any cause of action under Sections 544, 547 or 548 of the Bankruptcy Code, it is not entitled to any relief under Section 550 (Count XXXIX), as plaintiff agrees that Section 550 is wholly derivative of Sections 544, 547 or 548. *See* Compl. ¶ 1051.

## CONCLUSION

For all of the foregoing reasons, the complaint should be dismissed as to the Focus Value Fund pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: March 31, 2005.

Respectfully submitted,

ULMER AND BERNE LLP

By: /s/ Thomas L. Rosenberg
THOMAS L. ROSENBERG (0024898)
88 East Broad St., Suite 1600
Columbus, Ohio 43215-3581
(614) 229-0000
(614) 229-0023 (facsimile)
E-Mail: trosenberg@ulmer.com

*Trial Attorney for Defendant The Beacon Group III - Focus Value Fund, L.P.*

Of Counsel:

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

By: /s/ Douglas H. Flaum
DOUGLAS H. FLAUM
(A Member of the Firm)
Israel David
Shahzeb Lari
Lara Turcik
One New York Plaza
New York, New York 10004-1980
(212) 859-8000
(212) 859-4000 (facsimile)
E-mail: douglas.flaum@friedfrank.com

*Attorneys for The Beacon Group III – Focus Value Fund, L.P.*

466706.2

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2005, I electronically filed the foregoing Defendant The Beacon Group III - Focus Value Fund, L.P.'s Motion To Dismiss the Complaint, along with the accompanying Memorandum In Support and the Declaration of Lara Turcik, with exhibits thereto, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered counsel electronically. Pursuant to that notification, a true and exact copy of the foregoing was mailed to any party or counsel not receiving electronic service from CM/ECF by ordinary U.S. Mail, this 31st Day of March, 2005.

/s/ Rebecca Jacobs