**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

---

| | | |
|---|---|---|
| In re: | : | Case No. 2:03-MD-1565-JLG-MRA |
| | : | |
| National Century Financial Enterprises, Inc. | : | |
| | : | Judge Graham |
| Debtors.: | | Magistrate Judge Abel |
| | : | |

---

| | | |
|---|---|---|
| The Unencumbered Assets Trust, *et al*., | : | |
| | : | Case No. C2-04-1090 |
| Plaintiffs, | : | |
| vs. | : | Judge Graham |
| | : | Magistrate Judge Abel |
| JP Morgan Chase Bank, *et al.* | : | |
| | : | |
| Defendants | | |

---

**DEFENDANT AYERS' MOTION TO DISMISS THE AMENDED COMPLAINT OF THE UNENCUMBERED TRUST AND ERWIN I. KATZ, LTD., TRUSTEE**

Pursuant to Civil Rules 9 and 12, Defendant Donald H. Ayers respectfully moves the Court for an order dismissing all claims of Plaintiffs Unencumbered Assets Trust and Erwin I. Katz, Ltd., trustee, against Defendant Ayers for failure to plead fraud with particularity and for failing to state a claim upon which relief can be granted. Alternatively, Defendant Ayers moves the Court, pursuant to Civil Rule 12(e), for an Order requiring Plaintiffs to make a more definite statement of their claims. The basis for this motion is fully set forth in the accompanying memorandum in support.

Respectfully Submitted,

/s/ Brian E. Dickerson
Brian E. Dickerson (0069227)
James G. Vargo (0068214)
MAGUIRE & SCHNEIDER, L.L.P.
250 Civic Center Dr., Suite 200
Columbus, OH 43215
Telephone No.: (614) 224-1222
Facsimile No.: (614) 224-1236

## MEMORANDUM IN SUPPORT

Plaintiffs Unencumbered Assets Trust and Erwin I. Katz, Ltd., trustee (collectively referred to as "Plaintiffs") assert various claims against Defendant Donald H. Ayers ("Defendant Ayers") for, among other things, fraudulent acts allegedly committed against NPF VI, NPF X, NPF XII, and National Century Financial Enterprises, Inc. ("NCFE"), companies for which Defendant Ayers acted as an officer or director during the relevant time periods. As demonstrated below, the claims against Defendant Ayers, which are primary based on fraud, should be dismissed in their entirety.

### A. If the majority of NPF VI and NPF XII's Officers and Directors knew about the alleged fraud, then Defendant Ayers cannot have concealed the alleged fraud from NPF VI and NPF XII, and NPF VI and NPF XII cannot have detrimentally relied on any alleged representations of Defendant Ayers.

Counts I-VIII, X-XI, XIII-XV, and XXIV of the Amended Complaint are all premised on a fraudulent scheme allegedly entered into by Defendant Ayers. More specifically, Plaintiffs allege that Defendant Ayers, along with all but one of the officers and directors of NPF VI and NPF XII, entered into a scheme to defraud NPF VI and NPF XII of billions of dollars (A.C. ¶ 3).

In order to substantiate a claim for fraud, a plaintiff must establish the following:

(1) a representation or, where there is a duty to disclose, concealment of fact,
(2) which is material to the transaction at hand,
(3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(4) with the intent of misleading another into relying upon it,
(5) justifiable reliance upon the representation or concealment, and
(6) a resulting injury proximately caused by the reliance.

*Black v. Cosentino*, 117 Ohio App. 3d 40, 44 (1996).

In this case, Plaintiffs have not and cannot claim that the alleged fraud was concealed from NPF VI or NPF XII, or that these entities detrimentally relied on any implied representations of Defendant Ayers. In fact, Plaintiffs have alleged quite the opposite.

Plaintiffs allege that NCFE was the sole shareholder of NPF VI and NPV XII, and that at all times relevant hereto, Defendants Poulsen, Ayers, and Parrett were officers and directors of the NCFE, NPF VI and NPF XII (A.C. ¶¶ 37, 376-383). Plaintiffs also allege that prior to the execution of the NPF VI and NPF XII Master Indentures, which govern the operations of the NPF VI and NPF XII, Defendants Poulsen, Ayers, and Parrett, along with others, agreed to disregard material terms of the indentures (A.C. ¶¶ 156-157, 245-246). Plaintiffs allege that this decision to "disregard" the terms of the indentures provides the basis for NPF VI and NPV XII's claims (A.C. ¶¶ 156-157, 245-246).

As the Court knows, it is a long standing rule of law that a corporation, because of its nature, can only act through its agents. *C.I.T. Corp. v. Janis*, 418 F. 2d 960, 985-986 (6th Cir. 1969); *Jordan v. Global Natural Resources, Inc*. 564 F. Supp 59, 68 (S.D. Ohio 1983). Furthermore, while courts differ as to the effect of knowledge acquired by employees of a corporation, Ohio Courts have determined that knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation. *London & Lanceshire Indemnity Co. of America v. The Fairbanks Steam Shovel Co.,* 112 Ohio St. 136, 149-150 (1925).[1]

For example, in *Arcanum National Bank v. Hessler*, 69 Ohio St. 2d 549 (1982), the sole issue before the court was whether the plaintiff-appellee, Arcanum National

---

[1] Ohio law controls the circumstances under which the knowledge of fraud on the part of corporate directors will be imputed to the corporation. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 83-84; 114 S. Ct. 2048; 129 L. Ed 2d 67(1994).

Bank, was a holder in due course of the promissory note sold to appellee by the John Smith Grain Company, Inc. Appellant Hessler alleged that Arcanum National Bank had knowledge, actual or implied, that the John Smith Grain Company failed to give consideration for appellant's note, therefore Arcanum National Bank could not have acquired the note in good faith as a holder in due course.

The court, after examining the relationship between Arcanum National Bank and the John Smith Grain Company, concluded that the facts established that Arcanum National Bank had knowledge of the underlying infirmity in Hessler's note prior to acquiring it. The court based this conclusion upon the fact that C. North, Jr., a director of the John Smith Grain Company, had actual knowledge that there was no consideration given by the John Smith Grain Company for the note and therefore his knowledge was imputed to all the directors of the John Smith Grain Company. H. K. Smith, who was both a director for the John Smith Grain Company and Arcanum National Bank, was therefore found to have knowledge of the infirmity in the note, such knowledge also being imputed to Arcanum National Bank. *Id.* at 557-558.[2]

Thus, if Ohio Courts were willing to impute knowledge to the bank in *Hessler* based on the fact that one of the bank's officers was a director of a company that had imputed knowledge of the fraud, surely imputing knowledge of the alleged fraud to NPF VI and NPV XII is warranted here where all but one of the officers and directors were allegedly privy to it. *See The First Nat'l Bank of New Bremen v. Burns* (1913), 88 Ohio St. 434 ("it is well-established in Ohio a corporation can act only through its officer and agents, and the knowledge of the officers of a corporation is at once the knowledge of the corporation"). *See also Poth v. Russey*, 99 Fed. Appx. 446, 457 (4th Cir. 2004)

[2] The above case synopsis of *Hessler* was taken, verbatim, from the Court's analysis in *Sease v. John Smith Grain Co*., 17 Ohio App. 3d 223, 224-225 (1984).

("Ordinarily knowledge of officers and directors having substantial control of all activities of a corporation is imputed to the corporation.") *and Hellenic Inc. v. Bridgeline Gas Distrib. LLC (In re Hellenic Inc.)*, 252 F.3d 391, 395 (5th Cir. 2001) (finding that while courts generally differ as to the effect of knowledge acquired by other employees, there is agreement that the knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation).

Accordingly, the knowledge of the alleged fraud acquired by Defendants Poulsen, Ayers, and Parrett prior to and after the execution of the Master Indentures must be imputed to NPF VI and NPF XII as these individuals are all alleged to have been the officers and directors of NCFE, NPF VI, and NPF XII during all relevant times herein. As such, Plaintiffs, whose rights are no greater than those of NPF VI and NPF XII, cannot claim that defendants concealed material facts from NPF VI and NPF XII or that NPF VI and NPF XII relied on Defendants' alleged representations regarding their performance under the Master Indentures. Consequently, Counts I-VIII, X-XI, XIII-XV, and XXIV of the Amended Complaint, which are all based on this alleged fraudulent scheme, must be dismissed.

**B. Counts I-VIII, X-XI, XIII-XV, XXII, and XXIV of the Amended Complaint are Barred By The Doctrine of *In Pari Delicto.***

"'*In pari delecto* refers to the plaintiff's participation in the same wrongdoing as the defendant.'… The doctrine is premised on the equitable principle that 'no court will lend aid to man who founds his cause of action upon an immoral or illegal act.' " *In re Dublin Securities, Inc*., 133 F. 3d 377, 380 (6th Cir. 1997). Under the doctrine of *in pari delicto*, the law will not aid a party in its efforts to recover from an alleged joint tortfeasor when that party is of equal or greater fault. *Id. See also Jones v. Hyatt Legal Services*, 132 B.R. 853, 860 (S.D. Ohio 1991).

In *Dublin Securities*, the debtors, three separate corporations, devised and carried out initial public stock offerings that the bankruptcy trustee alleged to be fraudulent. The trustee for the debtors brought an action against the two law firms that represented the debtor and against the individual attorneys in those firms for, among other things, professional negligence and fraud based on their role of preparing documents for the security sales and in advising the debtors. *Id*. at 380.

The defendants in *Dublin Securities* moved to dismiss the trustee's complaint, arguing that the trustee's claims were barred by the doctrine of *in pari delicto*. In affirming the dismissal by the trial court, the Sixth Circuit Court of Appeals found that although the individual officers and directors were alleged to have acted adversely to the corporation's interest, those same individual officers and directors dominated and controlled the corporations' affairs. *Id*. at 380. Thus, the Sixth Circuit concluded that the officers and directors were the "alter egos" of the debtors and that therefore their malfeasance was directly attributable to the debtors. *Id.*

Similar facts exist here. Plaintiffs claim that NPF VI and NPF XII were used by Defendants Poulsen, Ayers, and Parrett to defraud investors out of millions of dollars (A.C. ¶¶ 1-3). More importantly, Plaintiffs allege that NCFE was the sole shareholder of NPF VI and NPV XII, and that at all times relevant hereto, Defendants Poulsen, Ayers, and Parrett were officers and directors of NCFE, NPF VI and NPF XII (A.C. ¶¶ 37, 376-383).

Thus, if NPF VI and NPF XII were used to facilitate the alleged fraud, and if a corporation can only act through its officers and directors, *see C.I.T. Corp., supra,* 418 F. 2d at 985-986, (in this case Defendants Poulsen, Ayers, and Parrett), then NPF VI and

NPF XII must be deemed to have been active participants in the fraud, and the Plaintiffs' claims are barred by the doctrine of *in pari delicto.*

Moreover, based on the allegations of Plaintiffs, NPF VI and NPF XII *were* directly involved in the alleged fraud. Plaintiffs allege that NPF VI and NPF XII had certain obligations to its investors that went unfulfilled due to the alleged fraud of Defendants (A.C. ¶¶ 1-3). Plaintiffs also claim that NPF VI and NPF XII, whose officers and directors were Defendants Poulsen, Ayers, and Parrett, appointed Defendants Poulsen, Ayers, and Parrett, along with Defendants Chase and Bank One, to act on NPF VI and NPF XII's behalf, and that that these defendants undertook their obligations with a concerted understanding that they would not perform their duties (A.C. ¶¶ 1-3, 50, 52-53. 156-157, 245-246, 385-395, 417, 439, 460, 483, 504, 525, 546, 568, 585, 596).

Thus, it is impossible to fathom how NPF VI and NPF XII could be an innocent to party to the alleged transactions when Defendants Poulsen, Ayers, and Parrett, as officers and directors of NPF VI and NPF XII, appointed themselves and the other Defendants to act on the companies' behalf, knowing that, as Plaintiffs' allege, all these Defendants had already entered into a plan or scheme to defraud the companies. Consequently, Counts I-VIII, X-XI, XIII-XV, XXII, and XXIV of the Amended Complaint, which are all based on this alleged fraudulent scheme, must be dismissed under the doctrine of *in pari delicto.*

### C. Plaintiffs lack standing to assert Counts I-VIII, X-XI, XIII-XV, XXII, and XXIV of the Amended Complaint because NPF VI and NPF XII actively participated in the alleged fraud.

Plaintiffs lack standing to assert claims on behalf of NPF VI and NPF XII that are allegedly premised upon the fraudulent acts of Defendants Poulsen, Ayers, and Parrett. Plaintiffs allege that Defendants Poulsen, Ayers, and Parrett made up all but one of the

officers and directors of NPF VI and NPF XII (A.C. ¶¶ 37-38, 43, 376-383). Thus, based on Plaintiffs' allegations, the majority of NPF VI and NPF XII's decision-makers not only knew of the alleged fraud, but were actively involved in it.

It is well established that a claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation. *See In re D.H. Overmyer Telecasting Co., Inc.*, 56 B.R. 657 (N.D.Ohio 1986); Barnes v. Schatzkin, 215 A.D. 10, 11, 212 N.Y.S. 536, 537 (1st Dept. 1925); and *Hirsch v. Arthur Andersen & Co.*, 72 F. 3d 1085, 1091-1093 (2nd Cir. 1995). *See also Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991). Consequently, Plaintiffs lack standing to assert Counts I-VIII, X-XI, XIII-XV, XXII, and XIV of the Amended Complaint,. *Id.*

**D. Plaintiffs lack standing to assert Counts I-VIII, X-XI, XIII-XV, XXII, and XXIV of the Amended Complaint because NPF VI and NPF XII did not suffer damages as a result of the Defendants' alleged acts.**

As the Court knows, a starting point for any claim seeking money damages is that the Plaintiff must have suffered an injury in fact. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2nd Cir. 1995)(to have standing, "'[a] plaintiff must always have suffered a "distinct and palpable injury to himself" . . . .'"). *See also Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S. Ct. 1601, 1608, 60 L. Ed. 2d 66 (1979).

In this case, a close review of the Master Indentures and Sales & Subservicing Agreement ("Sales Agreement") attached to the Amended Complaint reveals that NPF VI and NPF XII did not suffer any damages as a result of any of the alleged wrongful conduct of Defendants, and in particular, did not suffer any damages from the alleged actions or inactions of Defendant Ayers. Rather, any such losses were those of the creditors of these entities.

Under the Master Indentures, the NPF VI and NPF XII (the "Purchasers") were to purchase the receivables of the "Seller" pursuant to the terms of a Sale & Subservicing Agreement ("Sales Agreement") (A.C. ¶ 48; A.C. Exhibit C, § 2.1). Pursuant to the Sales Agreement, the Seller then agreed that all monies due on the purchased receivables would be deposited into a lockbox account, and that the rights to the lockbox accounts would be transferred to the Purchaser (Sales Agreement, § 2.3(d)). Those monies would then be transferred to a Collection Account and held in trust for the benefit of the Seller (Sales Agreement, § 2.3 and Exhibit B).

The monies were held in trust by the designated Trustee, and all monies, other than the fees paid to the Servicer or Trustee (Sales Agreement § 2.8) were either used to purchase additional receivables or were returned to the Seller (Sales Agreement, §§ 6.1-6.5). Thus, at no time during the performance of the Sales Agreement was any of the money that of the Purchasers, NPF VI and NPF XII.

This fact is further evidenced in the recitals to the Sales Agreement and in Plaintiffs' Amended Complaint in which Plaintiffs allege that NPF VI and NPF XII were "formed as a special purpose corporation[s] to acquire, hold, and collect certain well-defined, high-quality health care account receivables" (A.C. ¶¶ 408, 537). Furthermore, as evidenced by the Master Indentures, the money placed into the various trust accounts established under the Master Indentures was held for the benefit of the Note Holders and Sellers, not NPF VI or NPF XII (Master Indentures, § 6.01, *et seq.*).

Consequently, if the money allegedly misappropriated during the execution of alleged fraudulent scheme belonged to the Note Holders and Sellers (creditors of NPF VI or NPF XII), then Plaintiffs do not have standing to assert claims on their behalf. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2nd Cir. 1991) ("a

bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself"). *See also Caplin v. Marine' Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). As such, Plaintiffs fail to state a claim with regard to Counts I-VIII, X-XI, XIII-XV, XXII, and XXIV.

**E. Plaintiffs fail to state a claim with regard to the alleged Avoidable Transfers set forth in Count XVIII of the Amended Complaint.**

A motion to dismiss the claims alleged in Count XVIII should be granted in part because the alleged transfers involving Defendant Ayers occur outside the statutory one year "look back" period. Further, Defendant Ayers is not liable as an initial transferee under the Bankruptcy Code and is not the entity for whose benefit the transfer was made.

**1. The alleged fraudulent transfers involving Defendant Ayers occurred outside of the statutory "look back" period of one year.**

The alleged transfers involving Defendant Ayers are not avoidable by Plaintiffs under 11 U.S.C. § 548 because they fall outside of the statutory "look back" period of one year from the date of the filing of the bankruptcy petition. The Bankruptcy Code provides, in pertinent part, as follows:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within *one year* before the date of the filing of the petition …[.]
> …

11 U.S.C. § 548(a)(1)(emphasis added). *See also Rieser v. Milford (In re Chari),* 276 B.R. 206, 212 (Bankr. S.D. Ohio 2002).

In this case, the debtors filed their voluntary petition for bankruptcy on November 18, 2002 (A.C. ¶ 13). Accordingly, the "look back" period for recovery of fraudulent transfers pursuant to the Bankruptcy Code includes any transfers that may have occurred between November 18, 2001 and November 18, 2002.

Plaintiffs allege the fraudulent transfers involving Defendant Ayers occurred on the following dates: (1) March 9, 1999; (2) April 8, 1999; (3) July 14, 1999; (4) February 22 & 28, 2000; (5) March 1999; (6) February 2, 2000; (7) March 2001; (8) April 1, 2001; and (9) August 1, 2001 (A.C. ¶¶ 632, 639, 642, 646, 656, 660, 668, 676-690, 691, 700). All of the dates of the alleged transfers occurred before November 18, 2001. Accordingly, the transfers are not avoidable under 11 U.S.C. § 548, and Count XVIII, which relates to those alleged transfers, must be dismissed.

**2. Plaintiffs do not state a claim against Defendant Ayers with regard to the alleged transfers to business entities of which Defendant Ayers was a member because he is not liable as an "initial transferee" or "an entity for whose benefit" such transfer was made.**

Count XVIII should be dismissed against Defendant Ayers because the alleged fraudulent transfers were not made to Defendant Ayers, but to business entities that Defendant Ayers was alleged to have an ownership interest. As such, Defendant Ayers is not an initial transferee or as an entity for whose benefit such transfer was made.

The Bankruptcy Code provides, in pertinent part, as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550.

"A subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer." *In re Bullion Reserve of North America*, 922 F.2d 544, 548 (9th Cal. 1991) (citing Bonded Fin. Servs. v. European Am. Bank, 838 F.2d 890, 895 (7th Cir. 1988); *see*

*also, In re Richmond Produce Co.,* 118 Bankr. 753, 760 (Bankr. N.D. Cal. 1990) (a subsequent transferee can never be an entity for whose benefit the initial transfer was made)).

"The structure of the statute [11 U.S.C. § 550] separates initial transferees and beneficiaries, on the one hand, from immediate or mediate transferees, on the other. The implication is that the entity for whose benefit the transfer was made is different from a transferee, immediate or otherwise. 'Someone who receives the money later on is not an 'entity for whose benefit such transfer was made'; only a person who receives a benefit from the initial transfer is within this language.'" *In re Bullion,* 922 F2d at 548 (quoting *Bonded Fin. Servs,* 838 F.2d at 896).

Moreover, "the individuals' rights as interest holders in [an] LLC is not alone sufficient to qualify them as persons 'for whose benefit the transfers were made' within § 550(a)(1)'s meaning." *Turner v. Phoenix Fin., LLC (In re Imageset, Inc.),* 299 B.R. 709, 718 (Bankr. D. Me. 2003).

Plaintiffs do not allege that there were ever any subsequent transfers to Defendant Ayers (A.C. ¶¶ 631-718). Therefore, Plaintiffs have not alleged facts that would establish that Defendant Ayers was an initial transferee, an entity for whose benefit such transfers were made, or "an immediate or mediate transferee of such initial transferee." Accordingly, the claims set forth against Defendant Ayers in Count XVIII of the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

**F. Plaintiffs fail to allege "creditor" status and thus fail to state claims under Counts XIX and XX of the Amended Complaint.**

Plaintiffs claims under O.R.C. § 1336.04 and 1336.05 (Counts XIX and XX) should be dismissed because Plaintiffs did not allege standing as a creditor. Under both

R.C. §§ 1336.04 and 1336.05, the Plaintiffs must establish standing as a creditor. *Carter-Jones Lumber Co. v. Denune,* 132 Ohio App. 3d 430, 434 (1999); *Javitch v. Ward*, 2003 Ohio 321, 2003 Ohio App. LEXIS 332 (Ohio Ct. App. Cuyahoga County Jan. 24, 2003).

Pursuant to O.R.C. § 1336.04, a plaintiff can either have been one of the debtor's creditors either prior to or after the alleged transfer. *See* O.R.C. § 1336.04(A). A plaintiff pursuing a claim for relief under O.R.C. § 1336.05 must qualify as a creditor whose claim arose before the transfer. *See* O.R.C. § 1336.05(A). In either event, creditor status of the debtor is necessary.

In the case at bar, Plaintiffs failed to allege its status as a creditor at anytime (A.C. ¶¶ 13, 736, 742). Thus, the claims set forth by Plaintiffs in Counts XIX and XX of the Amended Complaint, which are based on O.R.C. §§ 1336.04 and 1336.05, should be dismissed.

**G. The alleged transfers in Count XIX and XX are time barred.**

Ohio Revised Code § 1336.09 provides as follows:

> A claim for relief with respect to a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code is extinguished unless an action is brought in accordance with one of the following:
> (A) If the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant;
> (B) If the transfer or obligation is fraudulent under division (A)(2) of section 1336.04 or division (A) of 1336.05 of the Revised Code, within four years after the transfer was made or the obligation was incurred;
> (C) If the transfer or obligation is fraudulent under division (B) of section 1336.05 of the Revised Code, within one year after the transfer was made or the obligation was incurred.

O.R.C. § 1336.09.

In this case, Plaintiffs allege that fraudulent transfers involving Defendant Ayers occurred on the following dates: (1) March 9, 1999; (2) April 8, 1999; (3) July 14, 1999; (4) February 22 & 28, 2000; (5) March 1999; (6) February 2, 2000; (7) March 2001; (8) April 1, 2001; (9) August 1, 2001 (A.C. ¶¶ 632, 639, 642, 646, 656, 660, 668, 676-690, 691, 700). Plaintiffs filed the original Complaint on or about November 17, 2004. Thus, the transfers that occurred on or about (1) March 9, 1999; (2) April 8, 1999; (3) July 14, 1999; (4) February 22 & 28, 2000; (5) March 1999; and (6) February 2, 2000, are time barred.

### H. Plaintiffs Fail to allege with particularity the facts and circumstances that form the basis for the alleged fraud of Defendant Ayers.

Plaintiffs' RICO claims are based on fraud, and therefore, like Plaintiffs fraud claims, must comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "all averments of fraud . . . be stated with particularity." To comply with Rule 9(b), the Amended Complaint must state specifically "the times, places, contents and victims of the underlying fraud" *Vild v. Visconi,* 956 F.2d 560, 567 (6th Cir. 1992).

In this case, Plaintiffs claim that Defendant Ayers committed fraud through his role as Vice President of the Servicer and that in that capacity Defendant Ayers, "as directed by Poulsen," provided instructions to the Trustee to disburse funds and move money in and out of the NPF VI trust accounts, entered into contracts with Sellers, arranged for sale agreements with Sellers, tracked receivables, and prepared reports regarding the business of NPF VI (A.C. ¶ 411).

Plaintiffs, however, fail to allege one <u>specific</u> <u>fraudulent</u> <u>transfer</u> directed by Defendant Ayers in furtherance of the alleged fraudulent scheme. Plaintiffs also fail to allege with any specificity exactly what conduct of Defendant Ayers involved "the

commission of two or more specifically prohibited state or federal criminal offenses." *See Sedima S.P.R.L. v. Imrex Company* (1985), 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed. 2d 346 (setting forth the elements of a RICO claim).

In addition, although Plaintiffs allege that the "Founders" committed various fraudulent acts in furtherance of the alleged fraud, Plaintiffs do not define that term (*See, e.g.,* A.C. ¶¶ 402). And even if Plaintiffs did define the term "Founders," Plaintiffs' Amended Complaint would still be deficient under Civil Rule 9 as many of Plaintiffs' allegations group Defendant Ayers with the "Founders" or all "Defendants."

A complaint alleging fraudulent conduct:

> may not rely upon blanket references to acts or omissions by all of the "defendants," for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.

*Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981).

While plaintiffs make many allegations in its Amended Complaint, they fail to plead each defendant's role in the alleged fraud with particularity (A.C. ¶¶ 312, 313, 314, 315, 368-402, 412-415, 421, 423-24, 508, 510, 553). Consequently, Counts I-VIII, X-XI, XIII-XV, and XXIV of the Amended Complaint should be dismissed for Plaintiffs' failure to adhere to Civil Rule 9.

### I. Plaintiffs fail to state a claim for Breach of Fiduciary Duty against Defendant Ayers in Count XIII of the Amended Complaint.

"A fiduciary relationship creates the highest order of duty imposed by law. If a fiduciary relationship exists, the fiduciary cannot profit from the relationship without the knowledge and permission of the principal." *Sallee v. Ft. Knox Nat'l. Bank, N.A. (In re Sallee*, 286 F.3d 878, 891 (6th Cir. 2002).

Plaintiffs attempts to hold Defendant Ayers liable for a breach of his fiduciary duty allegedly owed to NPF VI and NPF XII. Plaintiff, however, has not identified or alleged a source for this fiduciary duty in this Court. All of Plaintiffs' allegations of wrongdoing against Defendant Ayers, however, flow from his alleged actions with the Servicer (*See, e.g.,* A.C. ¶ 411). Thus, any alleged breach of duty by Defendant Ayers must be related to his role with the Servicer.

NPF VI and NPF XII appointed the Servicer, through the Master Indentures, to act on their behalf. NPF VI and NPF XII did not appoint Defendant Ayers. As such, there is no fiduciary relationship created by contract. Any duties owed by the Servicer to NPF VI and/or NPF XII were outlined in the Master Indentures, which do not identify the Servicer, much less Ayers, as a fiduciary of VI or XII.

Furthermore, any alleged actions of Defendant Ayers were certainly with the knowledge of NPF VI and NPF XII since he was an officer and director of both. As discussed in Sections A-C, *supra*, Defendant Ayers' knowledge is imputed to NPF VI and NPF XII. Accordingly, Defendant Ayers could not have acted without the knowledge of NPF VI and/or NPF XII.

Since both companies possessed knowledge of any alleged fraudulent actions, Defendant Ayers' actions were ratified by the companies. *Sekerak v. Nat'l. City Bank*, 342 F. Supp.2d 701, 708 (N.D. Ohio 2004)("Ratification may be implied when there is actual knowledge of an agreement, acceptance of its benefits and a failure to repudiate within a reasonable time"). Therefore, Plaintiffs fail to state a claim for Breach of Fiduciary Duty against Defendant Ayers in Count XIII of the Amended Complaint.

### J. Plaintiffs fail to state a claim for Knowing Participation in a Breach of Fiduciary Duty against Defendant Ayers in Count XIV of the Amended Complaint.

The crux of this allegation is that each Defendant owed NPF VI and NPF XII fiduciary duties; however, in the absence of any fiduciary duty there can be no knowing participation in a breach (See Section I, *supra*). Accordingly, Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted with regard to Count XIV.

**K. Plaintiffs fail to state a claim against Defendant Ayers for Aiding and Abetting in Count XV of the Amended Complaint.**

The Supreme Court of Ohio has never recognized a civil claim for aiding and abetting. *See Andonian v. A.C. & S., Inc.* (1994), 97 Ohio App. 3d 573, 647 N.E.2d 190. In addition, Ohio Appellate Court have held a cause of action for aiding and abetting does not exist under Ohio law. *See Federated Management Co. v. Coopers & Lybrand* (2000), 137 Ohio App. 3d 366, 738 N.E.2d 842. Thus, Plaintiffs cannot state a claim under this theory.

Nevertheless, Plaintiffs cannot maintain a claim against Defendant Ayers for aiding and abetting. Plaintiffs' claims for aiding and abetting are based on the allegedly fraudulent acts of Defendants (A.C. ¶ 621). As set forth above, since any knowledge of the alleged fraud Defendant possessed would have been imputed to NPF VI and NPF XII, Plaintiffs' claims must fail.

**L. Plaintiffs fail to state a claim against Defendant Ayers for Unjust Enrichment in Count XXIII.**

Unjust enrichment is an equitable remedy. As fully set forth above, any actions by Defendant Ayers were imputed to NPF VI and NPF XII, which renders both liable for any fraud which may have occurred. As a participant, NPF VI and NPF XII do not have the requisite "clean hands" that would allow this court to award an equitable remedy. *See Performance Unlimited, Inc. v. Questar Publishers*, Inc., 52 F.3d 1373 (6th Cir. 1995).

### M. Plaintiffs fail to state a claim against Defendant Ayers under Count XXI of the Amended Complaint.

In Count XXI, Plaintiffs seek the recovery of an "unlawful dividend" (A.C. ¶¶ 745-748). Plaintiffs, however, fail to allege that any dividends were paid. (A.C. ¶¶ 745-748). Further, if Plaintiffs are claiming such claims were fraudulent transfers, these claims were barred by the reasons set forth in §§ F-G.

### N. Defendant requests a more definite statement of the claims set forth in Counts XVI and XVII of the Amended Complaint.

In Counts XVI and XVII of the Amended Complaint, Plaintiffs assert that Defendant Ayers is liable to Plaintiffs for promissory notes allegedly signed by Defendant Ayers. Plaintiffs fail to attach copies of these notes to the Amended Complaint, and Defendant is uncertain as to the liability, if any, Defendant may have with regard to the notes. Therefore, pursuant to Civil Rule 12(e), Defendant Ayers respectfully requests the Court to Order Plaintiffs to provide a written copy of the alleged notes.

Respectfully submitted,

/s/ Brian E. Dickerson

Brian E. Dickerson (0069227)
James G. Vargo (0068214)
MAGUIRE & SCHNEIDER, L.L.P.
250 Civic Center Dr., Suite 200
Columbus, OH 43215
Telephone No.: (614) 224-1222
Facsimile No.: (614) 224-1236

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing was served via ordinary U.S. Mail and ECF filing, postage prepaid, on this 31st day of March, 2005, to the parties appearing on the attached service list.

| | |
|---|---|
| **Acci/Allcare of Pennsylvanie**<br>23975 Park Sorrento<br>Suite 370<br>Calabasas, CA 91302-4022 | **Joseph C Wasch**<br>Suite 210<br>888 East Olas Boulevard<br>Ft Lauderdale, FL 33301 |
| **Bobby R Burchfield**<br>Covington & Burling<br>1201 Pennsylvania Avenue. NW<br>Washington, DC 20004-2401 | **John K Villa**<br>Williams & Connolly<br>725 Twelfth Street NW<br>Washington, DC 20005 |
| **David Warren Alexander**<br>Squire Sanders & Dempsey<br>1300 Huntington Center<br>41 S High Street<br>Columbus, OH 43215 | **Gary Rubman**<br>Covington & Burling<br>1201 Pennsylvania Avenue NW<br>Washington, DC 22202 |
| **Robert M Cary**<br>Williams & Connolly<br>725 Twelfth Street NW<br>Washington, DC 20005 | **Stanley H Wakshlag**<br>One S E Third Avenue<br>28th Floor<br>Miami, FL 33131-1704 |
| **Michael Joseph Collins**<br>4800 Bank One Center<br>1717 Main Street<br>Dallas, TX 75201 | **William A Escobar**<br>Kelley, Drye & Warren, LLP<br>101 Park Avenue<br>New York, NY 10178 |
| **Joseph F Murray**<br>Murray Murphy Moul & Basil<br>326 S High Street<br>Suite 400<br>Columbus, OH 43215 | **James J Coster**<br>Satterlee, Stephens, Burke & Burke<br>230 Park Avenue<br>New York, NY 10169 |
| | |

| | |
|---|---|
| **Lawrence David Walker**<br>Taft Stettinius & Hollister<br>21 E State Street<br>12th Floor<br>Columbus, OH 43215-4221 | **Evan A Davis**<br>Cleary, Gottlieb, Steen & Hamilton<br>One Liberty Plaza<br>New York, NY 10006-1470 |
| **William K Davis**<br>Bell, Davis & Pitt, PA<br>100 North Cherry Street<br>Suite 600<br>Winston-Salem, NC 27120-1029 | **Howard D DuBosar**<br>DuBosar & Dolnick, PA<br>3010 North Military Trail<br>Suite 210<br>Boca Raton, FL 33431 |
| **Andrew L Goldman**<br>Bartlit Beck Herman Palenchar & Scott<br>Couthouse Place<br>54 West Hubbard Street<br>Chicago, IL 60610 | **Michael Roy Szolosi, Sr**<br>McNamara and McNamara<br>88 East Broad Street<br>Suite 1250<br>Columbus, OH 43215 |
| **Sharon Katz**<br>Davis Polk & Wardwell<br>450 Lexington Avenue<br>New York, NY 10017 | **John Edward Haller**<br>Shumaker Loop & Kendrick<br>41 S High Street<br>Suite 2210<br>Columbus, OH 43215 |
| **Home Medical Care of America Inc**<br>55 Carnegie Plaza<br>Cherry Hill, NJ 08003 | **Robert N Kaplan**<br>Kaplan Kilsheimer & Fox<br>805 Third Avenue<br>New York, NY 10022 |
| **William W Deem**<br>McGuire Woods<br>50 North Laura Street<br>Suite 3300<br>Jacksonville, FL 32202 | **Timothy Edward Miller**<br>Isaac Brant Ledman & Teetor<br>250 E Broad Street<br>Suite 900<br>Columbus, OH 43215-3742 |
| **Harold G Levison**<br>Kasowitz, Benson, Torres & Friedman, LLP<br>1633 Broadway<br>New York, NY 10019 | **David G Jennings**<br>Isaac Brant Ledman & Teetor<br>250 E Broad Street<br>Suite 900<br>Columbus, OH 43215-3742 |
| **William R Maguire**<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY 10004-1482 | **John M Callagy**<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178 |

| | |
|---|---|
| **Tiffany C Miller**<br>Bailey Cavalieri LLC<br>10 W Broad Street<br>Suite 2100<br>Columbus, OH 43215-3422 | **William A Miller**<br>William A Miller, PLLC<br>2390 E Camelback Road<br>Suite 225A<br>Phoenix, AZ 85016-3434 |
| **Benjamin Scot Zacks**<br>Zacks Law Group LLC<br>The e Building<br>33 S James Road<br>Third Floor<br>Columbus, OH 43213 | **National Rehab of Florida**<br>8727 Beckingham Place<br>Orlando, FL 32836 |
| **Kyle A Lonergan**<br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017-3954 | **Barry Ostrager**<br>Simpson Thatcher & Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017-3954 |
| **Michael Hiram Carpenter**<br>Carpenter & Lipps LLP<br>1600 Huntington Center<br>41 S High Street<br>Columbus, OH 43215 | **David Albert Kopech**<br>Kopech & Associates<br>140 E Town Street<br>Suite 1070<br>Columbus, OH 43215 |
| **R Brian Oxman**<br>R Brian Oxman Law Offices<br>14126 E Rosencrans Blvd<br>Santa Fe Springs, CA 90670 | **Robert J Madden**<br>Gibbs & Bruns LLP<br>110 Louisiana<br>Suite 5300<br>Houston, TX 77002 |
| **Roger Philip Sugarman**<br>Kegler Brown Hill & Ritter 65 E State Street<br>Suite 1800<br>Columbus, OH 43215-4294 | **Michael Proctor Graney**<br>Simpson Thacher & Bartlett<br>1 Riverside Plaza<br>9th Floor<br>Columbus, OH 43215 |
| **Jeffrey Q Smith**<br>King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036-4003 | **Steven G Brody**<br>King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036-4003 |
| **Thomas Leslie Long**<br>Baker & Hostetler<br>65 E. State Street<br>Suite 2100<br>Columbus, OH 43215-4260 | **Albert J Lucas**<br>Calfee Halter & Griswold<br>21 E State Street<br>Columbus, OH 43215-4243 |

| | |
|---|---|
| **Lawrence A Wojcik**<br>Piper Rudnick LLP<br>203 north Lasalle Street<br>Suite 1800<br>Chicago, IL 60601-1293 | **Thomas Fellig**<br>Fellig Feingold Edelblum & Schwartz LLC<br>Two University Plaza<br>Suite 307<br>Hackensack, NJ 07601 |
| **Israel David**<br>Fried Frank Harris Shriver & Jacobson LLP<br>One New York Plaza<br>New York, NY 10004 | **Paula D Friedman**<br>Piper Rudnick LLP<br>203 North Lasalle Street<br>Suite 1800<br>Chicago, IL 60601-1293 |
| **Roger L Longtin**<br>Piper Rudnick LLP<br>203 N LaSalle Street<br>Suite 1800<br>Chicago, IL 60601-1293 | **Barry G Sher**<br>Fried Frank Harris Shriver & Jacobson LLP<br>One New York Plaza<br>New York, NY 10004 |
| **George E Ridge**<br>Cooper Ridge & Lantinberg<br>200 West Forsyth Street<br>Suite 1200<br>Jacksonville, FL 32202 | **Thomas Ross Hooper**<br>Fried Frank Harris Shriver & Jacobson LLP<br>One New York Plaza<br>New York, NY 10004 |
| **Marc J Kessler**<br>Hahn Loeser & Parks<br>65 E State Street<br>14th Floor<br>Columbus, OH 43215-4224<br>614-221-0240 | **Jeffry J Cotner**<br>Gibbs & Bruns LLP<br>1100 Louisiana<br>Suite 5300<br>Houston, TX 77002 |
| **Scott Humphries**<br>Gibbs & Bruns LLP<br>1100 Louisiana<br>Suite 5300<br>Houston, TX 77002 | **Kevin Janus**<br>Quinn Emanuel Urquhart Oliver & Hedges LLP<br>335 Madison Avenue<br>17th Floor<br>New York, NY 10017 |
| **Lynne M Longtin**<br>Rendigs Fry Kiely & Dennis LLP<br>One West Fourth Street<br>Suite 900<br>Cincinnati, OH 45202-3688 | **Richard B Harper**<br>McCarter & English<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102 |
| | |

| | |
|---|---|
| **James Edward Arnold**<br>Clark Perdue Roberts & Scott<br>471 East Broad Street<br>Suite 1400<br>Columbus, OH 43215 | **Hector D Geribon**<br>Lieff Cabraser Heinmann & Bernstein LLP<br>780 Third Avenue<br>48th Floor<br>New York, NY 10017 |
| **Arthur Edmund Phelps, Jr.**<br>Rendigs Fry Kiely & Dennis LLP<br>One West Fourth Street<br>Suite 900<br>Cincinnati, OH 45202 | **Robert Frederic Brown**<br>Rendigs Fry Kiely & Dennis LLP<br>One West Fourth Street<br>Suite 900<br>Cincinnati, OH 45202-3688 |
| **Brian Paul Miller**<br>Akerman Senterfitt<br>One SE Third Avenue<br>28th Floor<br>Miami, FL 33131 | **Matthew B Andelman**<br>Williams & Connolly<br>725 Twelfth Street NW<br>Washington, DC 20005 |
| **Luan K Phan**<br>Paz & Phan LLP<br>1801 Avenue of the Stars<br>Suite 825<br>Los Angeles, CA 90067 | **Robert F. Brown**<br>Rendigs Fry Kielly & Dennis LLP<br>One West Fourth Street<br>Suite 900<br>Cincinnati, OH 45202 |