IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| | : | |
| In re National Century Financial Enterprises, Inc., Investment Litigation. | : | Case No. 2:03-md-1565 |
| | : | Judge Graham |
| | : | Magistrate Judge Abel |
| | : | |

ORDER ON MOTIONS FOR LEAVE TO AMEND

This matter is before the Court on a number of motions for leave to amend filed by certain plaintiffs in this multidistrict litigation case. Plaintiffs wish to add allegations in further support of their securities fraud claims. Plaintiffs filed their motions for leave to amend in response to defendants' motions to dismiss. For the reasons stated below, the motions for leave to amend are GRANTED.

**I. Background**

After a case management conference with the parties, the Court issued an order granting all plaintiffs in the MDL leave "to file amended complaints and name additional parties as defendants" by January 18, 2004. See Dec. 19, 2003 Order. The Court also set a deadline of March 1, 2004 for parties to file substantive motions to dismiss. After defendants filed numerous motions to dismiss, certain plaintiffs sought leave to amend their complaints.

**A. MetLife and Lloyds**

Plaintiffs Metropolitan Life Insurance Company ("MetLife") and Lloyds TSB Bank PLC were the first to request leave to amend. They filed their motion for leave to amend on May 1, 2004. In April

2004, the Federal Bureau of Investigation made available to plaintiffs over five-hundred boxes of documents seized from the offices of National Century Financial Enterprises, Inc. MetLife and Lloyds's proposed amendments are based on information contained in those documents.

The proposed amendments concern four general topics. First, the amended complaint alleges that Defendant Credit Suisse First Boston helped draft a Private Placement Memoranda which contained misrepresentations about the notes issued by NPF XII, a National Century special-purpose financing program. Second, the amended complaint adds allegations to support the claim that NPF XII's outside directors – Defendants Harold W. Pote, Thomas G. Mendell, and Eric. R. Wilkinson – knew National Century was manipulating funds to create the appearance of satisfying NPF XII's reserve requirements. Third, the amended complaint alleges that Defendant Fitch, Inc. received information from National Century that made it aware of National Century's failure to adhere to the reserve requirements. Fourth, the amended complaint alleges that National Century's fraud should have been obvious to all the professionals who were involved with National Century.

Defendants Credit Suisse, the Outside Directors (Pote, Mendell, and Wilkinson), and Fitch oppose the motion for leave to amend. Defendants the Beacon Group, LLC, JP Morgan Chase, Moody's Investors Service, Inc., and Lance Poulsen also oppose the motion. The Defendants offer the same or similar reasons for their opposition: (1) granting leave to amend would frustrate the purpose of the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4 ("PSLRA"); (2) it would prejudice the Defendants; (3) MetLife and

Lloyds unduly delayed in attempting to amend their complaint; (4) MetLife and Lloyds have acted in bad faith; and (5) the proposed amendments are futile.

Since filing their original motion for leave to amend, MetLife and Lloyds filed a second motion for leave to amend on November 3, 2004. The latest proposed amendments reflect further information contained in the documents received from the FBI in April 2004, as well as electronic documents received from the FBI in May and June of 2004. The amendments add allegations about the Defendants' knowledge and access to information relating to National Century's fraud.

The Defendants oppose the second motion for leave to amend for the same reasons as they opposed the first and argue that the second motion is all the more untimely.

**B. Arizona Noteholders**

The Arizona Noteholder Plaintiffs likewise seek leave to amend their complaints. They filed their motion on May 3, 2004 in response to the motions to dismiss. The amendments add further support to the Arizona Noteholders' existing Blue Sky law claims and assert additional Blue Sky law claims. The amendments also make specific allegations regarding the Defendants' alleged wrongdoing, intent, and participation in a Ponzi scheme.

Defendants the Beacon Group, Credit Suisse, JP Morgan Chase, Kuld Corp., the Outside Directors, Lance and Barbara Poulsen, and PricewaterhouseCoopers LLP oppose the motion for leave to amend.[1] Defendants argue that the motion is untimely, futile, filed in bad

---

[1] Defendant Deloitte & Touche LLP also opposed the motion for leave to amend but has since reached a settlement with the Arizona Noteholders.

faith, and would prejudice the Defendants if granted. In addition, the Outside Directors and PricewaterhouseCoopers argue that the amendments violate an agreed protective order – entered by the bankruptcy court – because those amendments rely on information that the Arizona Noteholders' counsel had agreed not to use in litigation.

**C. New York Pensions Funds**

Plaintiffs New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund (collectively the "New York Pension Funds") also seek leave to amend their complaint. Their action became part of the MDL on March 19, 2004. The New York Pension Funds filed their motion for leave to amend on June 11, 2004, six weeks after motions to dismiss were filed. As with MetLife and Lloyds, the Pension Funds' proposed amendments are largely based on documents seized by the FBI from National Century's offices. The amendments concern Defendants' knowledge and participation in National Century's fraud, making reference to specific documents obtained from the FBI.

Defendants the Beacon Group, Credit Suisse, Fitch, JP Morgan Chase, and the Outside Directors oppose the motion for leave to amend. Defendants argue that the motion is untimely, futile, filed in bad faith, and would prejudice the Defendants if granted. Defendants also argue that granting leave to amend would frustrate the purpose of the PSLRA.

**D. ING Bank**

Plaintiff ING Bank N.V. filed a motion for leave to amend on

June 28, 2005. ING seeks to incorporate information obtained from the FBI documents, as well as add Bank One, N.A., the Beacon Group, and the Focus Value Fund, LP, as defendants. ING also seeks to add claims against JP Morgan Chase and Deloitte & Touche for aiding and abetting breach of fiduciary duty, and against the Outside Directors for negligence, fraud, and aiding and abetting breach of fiduciary duty.

The Magistrate Judge granted ING's motion for leave to amend on September 9, 2005 (doc. 639). He found that the Defendants had not demonstrated any prejudice from ING's delay in seeking leave to amend. The Magistrate Judge noted that discovery has not yet begun, that the MDL remains in the early stages of litigation, and that Defendants would not face significant additional expenses if leave were granted. Further, the Magistrate Judge rejected the Outside Directors' argument that the amendments are futile.

The Outside Directors filed an objection to the Magistrate Judge's order. Their objection is discussed below.

**E. The Unencumbered Assets Trust**

The Unencumbered Assets Trust ("UAT") initiated an action in this Court on November 17, 2004. See Unencumbered Assets Trust v. JP Morgan Chase Bank, et al., Case No. 04-cv-1090 (S.D. Ohio). On May 31, 2005, the UAT filed a motion for leave to amend its complaint. The amended complaint would add four state law counts against JP Morgan Chase and Bank One. It would also add allegations concerning the conduct and intent of the Defendants and the roles certain Defendants played in National Century's fraud.

Defendants Donald Ayers, JP Morgan Chase, Rebecca S. Parrett, and Lance and Barbara Poulsen oppose the motion for leave to amend.

Defendants argue that the motion is untimely and that permitting leave would prejudice them. JP Morgan Chase further argues that the motion is brought in bad faith and the amendments would be futile.

The UAT filed a second motion for leave to amend on September 12, 2005. The sole purpose of the motion was to add the law firm Purcell & Scott as a defendant. The Magistrate Judge granted the motion on November 11, 2005, without objection.

## II. Standard for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend the complaint after a responsive pleading has been filed only by leave of the court, but requires that such leave "be freely granted when justice so requires." Fed. R. Civ. P. 15(a). In the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment," leave to amend should be "freely given." Foman v. Davis, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. Id.

Some Defendants have suggested that Rule 16(b) applies instead of Rule 15(a). Under Rule 16(b), certain scheduling orders may not be modified "except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). Defendants argue that the Court's December 19, 2003 Case Management Order set a deadline

for amending the pleadings and that any party seeking leave to amend must show good cause.

The Court believes that Rule 15(a) applies, not Rule 16(b). The Case Management Order was not intended to be a Rule 16 order. It did not establish discovery deadlines or set dates for further conferences. Indeed, discovery is currently stayed under the PSLRA and this Court is without authority to preside over a trial in the transferred actions. See Rule 7.6(b), Rules of Proc. of the Judicial Panel on Multidistrict Litigation.

The Court further finds that even if the "good cause" standard did apply, Plaintiffs have satisfied it for the reasons discussed below.

## III. Discussion

### A. The PSLRA

Defendants Beacon Group, Credit Suisse, Fitch, JP Morgan Chase, Lance Poulsen, and the Outside Directors argue that granting leave to amend would frustrate the purpose of the PSLRA. Congress enacted the PSLRA to "screen out lawsuits having no factual basis, to prevent harassing strike suits, and to encourage attorneys to use greater care in drafting their complaints." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 700 (6th Cir. 2004). Defendants argue that allowing Plaintiffs to repeatedly amend their complaints would defeat the PSLRA's gatekeeping function.

In support of their argument, Defendants cite Miller v. Champion Enterprises, 346 F.3d 660 (6th Cir. 2003), which described the PSLRA as "restricting the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule

15(a)." 346 F.3d at 692. In Miller, the district court dismissed the complaint for failure to meet the heightened pleading standards of the PSLRA. Plaintiff then sought leave to file an amended complaint, which the district court denied. On appeal, the Sixth Circuit agreed that the complaint failed to state a claim for securities fraud and that leave to amend should be denied. The court noted that the purpose of the PSLRA is "'to screen out lawsuits that have no factual basis'" and "'to protect innocent defendants from having to pay nuisance settlements in securities fraud actions in which a foundation for the suit cannot be pleaded.'" Id. at 691-92 (quoting In re NAHC, Inc. Secs. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002)). After finding the complaint deficient under the PSLRA, the court denied plaintiff's motion for leave to amend, noting that "the purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA." Id. at 692.

Defendants also cite PR Diamonds, supra, another securities fraud case. In PR Diamonds, the district court dismissed an amended complaint for failing to make specific allegations giving rise to a strong inference of scienter. The district court dismissed the case without allowing plaintiffs an opportunity to amend their complaint. The Sixth Circuit affirmed the district court upon finding that the complaint failed to state a claim and that plaintiffs were not entitled to amend their complaint a second time. The court noted that "[w]hen a motion to dismiss is granted in a case not involving the PSLRA, the usual practice is to grant plaintiffs leave to amend the complaint." 364 F.3d at 698. But when a securities fraud action is brought under the PSLRA, a

plaintiff's ability to amend the complaint is restricted by the purposes of the PSLRA. Id. at 700. Where a court has found a complaint lacking under the PSLRA, it need not give the plaintiff "yet another opportunity to amend" the complaint. Id.[2]

The situation here is unlike Miller and PR Diamonds, where motions to dismiss had been granted by the time the plaintiffs sought leave to amend. Here, all of the Plaintiffs filed motions for leave to amend before any decision on the motions to dismiss was issued. It is true, as Defendants point out, that some of the Plaintiffs have already amended their complaints. But this is not a case where plaintiffs are trying to "amend and amend until they [get] it right." Miller, 346 F.3d at 690. Some of the plaintiffs amended their complaints before their cases became part of this MDL. Some plaintiffs amended when the Court granted all plaintiffs an opportunity to do so after the Case Management Conference. Since those amendments, more information about the scope of National Century's fraud has come to light. The proposed amendments currently before the Court are largely a reflection of information obtained after the motions to dismiss were filed.

In Miller and PR Diamonds, the Sixth Circuit held that a plaintiff who files a deficient securities fraud action cannot escape dismissal by repeatedly amending the complaint. The lawsuits in this MDL cannot be considered baseless. It is alleged, and many Defendants concede, that National Century committed massive fraud. Investors lost over $2.5 billion and the resulting

[2] The Sixth Circuit further found that plaintiffs' request for leave to amend was procedurally defective. Plaintiffs did not file a motion; instead, they made the request in their opposition to the motion to dismiss. PR Diamonds, 364 F.3d at 699.

bankruptcy proceedings were among the largest in Ohio history, according to the bankruptcy court. In short, the Court finds that the PSLRA would in no way be undermined by allowing Plaintiffs to amend their complaints. Cf. Werner v. Werner, 267 F.3d 288, 297 (3d Cir. 2001) (granting leave to amend in securities fraud action because "justice and fairness require[d] that the plaintiffs . . . be allowed an opportunity to amend their complaint to include allegations relating to the newly discovered [evidence]").

This is not a situation where Plaintiffs are coming to the Court to get an advisory opinion on the complaints so that they can turn around and cure any deficiencies. Plaintiffs have sought leave to amend before the motions to dismiss are ruled on. Their approach is expressly supported by PR Diamonds, where the court reasoned, "'Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint.'" 364 F.3d at 699 (quoting Begala v. PNC Bank, 214 F.3d 776, 784 (6th Cir. 2000)). See also Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir. 2002) (discussing how courts are more liberal in granting leave to amend if leave is sought before judgment).

Thus, the Court finds that granting leave to amend will not frustrate the purposes of the PSLRA.

**B. Delay and Prejudice**

Nearly every Defendant argues that Plaintiffs unduly delayed in seeking leave to amend. Defendants point out that all of the motions for leave were filed after the deadline set in the December

19, 2003 Case Management Order.

The Court did not intend that deadline to be an absolute bar against Plaintiffs seeking leave to amend. Rather, the Case Management Order gave blanket leave to all plaintiffs in the MDL to add parties and claims. Nothing in the Case Management Order prohibited Plaintiffs from seeking leave to amend after the deadline.

The delay in seeking leave to amend was relatively short with respect to MetLife and Lloyds, the Arizona Noteholders, and the New York Pensions Funds. MetLife and Lloyds first sought leave to amend within three-and-a-half months of the date set by the Case Management Order, as did the Arizona Noteholders. The New York Pensions Funds sought leave within three months of their action becoming part of the MDL.

The remainder of the motions for leave were filed somewhat later. MetLife and Lloyds filed their second motion for leave on November 3, 2004, six months after their first. ING filed its motion on July 28, 2005. The UAT filed its motion six months after filing suit. However, delay alone is not a ground for denying leave to amend. Dana Corporation v. Blue Cross & Blue Shield Mutual, 900 F.2d 882, 888 (6th Cir. 1990). The party opposing leave to amend must demonstrate significant prejudice. Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999); Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986). The Court determines prejudice with reference to whether granting leave to amend would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from

bringing a timely action in another jurisdiction." Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994). The longer the period of unexplained delay, the lesser the burden of demonstrating prejudice. Id.

In granting ING's motion for leave, the Magistrate Judge found:

> Despite their arguments, defendants have not identified any demonstrable prejudice from the delay in amending the pleadings. Although this case has been pending since 2003, discovery has not yet begun, and the case remains in the early stages of litigation. Furthermore, defendants have not demonstrated that they will face significant additional expenditures to conduct discovery and prepare for trial if plaintiff is permitted to amend its complaint.

Sept. 9, 2005 Order, Doc. 639, p. 5. The Court agrees with the Magistrate Judge's analysis and finds that it applies with equal force to the other motions for leave to amend. The MDL remains in the early stages, and allowing leave to amend will not require Defendants to expend significant additional resources or significantly delay the resolution of the dispute.

**C. Bad Faith**

Some Defendants argue that Plaintiffs acted in bad faith because they sought leave to amend after Defendants filed their motions to dismiss. The Court finds no bad faith on the part of Plaintiffs. Plaintiffs received a vast number of documents around the same time Defendants filed their motions. The Court is unwilling to ascribe bad faith to Plaintiffs for wanting to amend their pleadings based on the information they received.

The Outside Directors and PricewaterhouseCoopers further argue that the Arizona Noteholders acted in bad faith because the

proposed amendments violate a protective order entered by the bankruptcy court. Apparently the Outside Directors and PricewaterhouseCoopers agreed to produce documents in response to a subpoena in National Century's bankruptcy proceedings on the condition that counsel "shall neither use any non-public [material] as an exhibit in any filing nor file any non-public [material] in any litigation" brought by the Noteholders until discovery begins in that litigation.

The Outside Directors have not identified any specific amendments that they believe violate the protective order. Bad faith cannot be inferred on the bare allegation that the amendments may violate a protective order. See Outside Directors' Reply Brief, Doc. 373, p. 35 n. 54 (admitting that "it is impossible . . . to ascertain" whether the Arizona Noteholders relied on documents produced under the protective order).

PricewaterhouseCoopers points to paragraphs 152B through 152R of the proposed amended complaint as violating the protective order. Those paragraphs make reference to documents produced in response to the subpoena. The Noteholders counter that they did not violate the protective order because the order only prohibited them from filing PricewaterhouseCoopers documents as exhibits to the amended complaint or distributing such documents, which the Noteholders did not do.

The Court finds that PricewaterhouseCoopers has not demonstrated bad faith. Despite arguing that the Noteholders violated the protective order, PricewaterhouseCoopers never raised the issue with the bankruptcy court, which signed that order. It is not this Court's role to determine in the first instance whether

the Noteholders violated the bankruptcy court's protective order. Moreover, the Noteholders' response as to why they did not violate the protective order is a plausible one, based on a reasonable interpretation of the protective order. Thus, the Court cannot find that the Noteholders acted in bad faith in seeking leave to amend.

**D. Futility**

"It is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation, 632 F.2d 21, 23 (6th Cir. 1980); see also Miller v. Calhoun County, 408 F.3d 803, 817 (6th Cir. 2005). Ordinarily though, a court will not consider the full merits of a proposed amendment unless it appears to be frivolous or clearly insufficient on its face. See Brown v. Worthington Steel, Inc., 211 F.R.D. 320, 323 (S.D. Ohio 2002); Remee Products Corp. v. Sho-Me Power Elec. Co-op, No. 01-cv-5552, 2002 WL 31323827, at *9 (S.D.N.Y. Oct. 17, 2002); Lerman v. Chuckleberry Pub., Inc., 521 F.Supp. 228, 231 (S.D.N.Y. 1981) ("[U]nless a proposed claim is clearly frivolous or legally insufficient on its face, the court should not consider the merits of a claim or defense on a motion to amend."). The merits of a complaint are often best resolved through a motion to dismiss or a motion for summary judgment. See Brown, 211 F.R.D. at 323; Berkeley-Dorchester Counties Econ. Dev. Corp. v. U.S. Dept. of Health and Human Serv., 395 F.Supp.2d 317, 325 (D.S.C. 2005); Rambus, Inc. v. Infineon Technologies, AG, 304 F.Supp.2d 812, 819 (E.D. Va. 2004); WIXT Television, Inc. v. Meredith Corp., 504 F.

Supp. 1003, 1010 (N.D.N.Y. 1980).

Defendants Fitch, Focus Value Fund, JP Morgan Chase, Moody's, the Outside Directors, and PricewaterhouseCoopers all argue that the proposed amendments are futile. Only the Outside Directors and Fitch explain their positions in detail. The remainder of the Defendants briefly state their positions and direct the Court's attention to the arguments they made in the motions to dismiss. The Court will address those arguments in its forthcoming decision on the motions to dismiss.

The Outside Directors argue that the proposed amendments in MetLife and Lloyds's first motion for leave are futile because the amendments do not support a strong inference of scienter and fail to show that the Outside Directors controlled NPF XII. The Court, however, finds that the proposed amendments are not facially deficient. In asserting a claim under §10(b) of the Securities Exchange Act of 1934, MetLife and Lloyds allege that the Outside Directors had knowledge of National Century's manipulation of funds and failure to maintain the proper level of reserves. Specifically, the amendments allege that the Outside Directors received memos from Lance Poulsen, National Century's President, in September 2000 and October 2002 clearly indicating that National Century was manipulating funds to give the appearance of complying with its reserve requirements. See MetLife's Proposed Third Amended Compl., ¶¶76-77; Lloyds's Proposed Third Amended Compl., ¶¶73-74. In asserting a §20(a) control person claim, the proposed amendments allege that the Outside Directors exercised more control than typical outside directors do and cite a letter written by Pote in which he described himself as an "active director." See

MetLife's Proposed Third Amended Compl., ¶96; Lloyds's Proposed Third Amended Compl., ¶137.

Fitch raises futility objections against three of the motions for leave to amend: both of Lloyds's motions[3] and the New York Pension Funds' motion. Lloyds's first motion would add the allegation that Fitch received a June 21, 2001 National Century memo indicating that National Century was not in compliance with its reserve requirements. Despite knowing this, Fitch gave a "AAA" rating to National Century notes. See Lloyds's Proposed Third Amended Compl., ¶119. Fitch argues that this allegation is futile because Fitch rated, and Lloyds purchased, the notes three months before the June 21, 2001 memo was written. Fitch further argues that the Master Indenture for NPF XII did not require a particular level of reserves.

The Court finds Fitch's arguments unpersuasive at the leave-to-amend stage. Even if Fitch rated the notes in advance of receiving the memo, a §10(b) violation can occur if "prior statements were true when made but misleading if left unrevised." In re Phillips Petroleum Secs. Litig., 881 F.2d 1236, 1245 (3d Cir. 1989). The Court need not decide now whether this is the case with Fitch; it is enough at this stage that Lloyds has asserted a facially valid claim against Fitch. As to Fitch's argument that the Master Indenture did not have a reserve requirement, this assertion is at odds with the allegations of the complaint – which the Court must accept as true, see Scheuer v. Rhodes, 416 U.S. 232 (1974) – and, at least on its face, at odds with the language of the Master Indenture. See Master Indenture, §§1.01, 4.03(t),

---

[3] Fitch does not argue that MetLife's proposed amendments are futile.

7.01(g).

Lloyds's second motion for leave would add the allegation that Fitch's notes from a July 13, 2000 meeting with National Century show that Fitch knew National Century was engaging in fraud. According to the notes, Fitch was "surprised by the extent of "related party transactions," National Century had "not been forthcoming," and "this is a sign of problems." See Lloyds's Proposed Fourth Amended Compl., ¶129. The proposed complaint also alleges that a July 16, 2001 memo from Sherry Gibson of National Century to Lance Poulsen stated that the low reserve levels had "raised many questions from Fitch." Id., ¶131.

Fitch argues that these allegations are futile because, rather than show knowledge of fraud, they demonstrate Fitch's diligence in following up on its concerns about National Century. Fitch argues that National Century provided satisfactory responses to its concerns and that Fitch had no reason to change its ratings of National Century notes. Fitch cites a July 7, 2000 press release to demonstrate that it reacted properly in investigating concerns about National Century's practices.[4]

Fitch's argument is based on inferences and evidence that the Court may not consider. Fitch interprets the new allegations as showing that Fitch responded properly to concerns about National Century, and it quotes a July 7, 2000 press release as proof. However, the new allegations should be viewed in a light most favorable to the plaintiff, see Scheuer, 416 U.S. at 236, and the press release is outside the scope of the pleadings, see Weiner v.

---

[4] Fitch also argues that, as a rating agency, it owed no duty to speak. This argument was made in Fitch's motion to dismiss and the Court will consider it in ruling on that motion.

Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997). The Court finds that the proposed amendments support an inference that Fitch was on notice of wrongdoing at National Century, yet gave the notes a "AAA" rating.

Lastly, Fitch argues that the proposed amendments of the New York Pension Funds are futile. The Pension Funds seek to add the allegation that Fitch received the June 21, 2001 memo indicating that National Century was not in compliance with its reserve requirements. Fitch argues that this allegation is futile because the Pension Funds purchased notes eight months before Fitch received the memo. But, as stated above, a §10(b) violation can occur if "prior statements were true when made but misleading if left unrevised." In re Phillips, 881 F.2d at 1245. Fitch next argues that the Master Indenture required no specific level of reserves. Again, this is at odds with the complaint and the language of the Master Indenture. Fitch also has submitted the declaration of one of its employees, Brigid Keyes to show that Fitch properly followed up on its concerns with National Century's reserves. This declaration is outside the scope of the pleadings.

In sum, the Court finds that the proposed amendments are not futile.

## IV. Objection to the Magistrate Judge's Order

The Magistrate Judge granted ING's motion for leave to amend on September 9, 2005 (doc. 639). The Outside Directors had argued that the proposed amendments concerning fraud were futile. The Magistrate Judge disagreed and found that the amendments were sufficiently specific to satisfy Fed. R. Civ. P. 9(b). In their

objection, the Outside Directors do not object to the substance of the Magistrate Judge's findings, but ask that his findings "not be considered the law of the case."

The Outside Directors' objection is overruled. They certainly are free to repeat their Rule 9(b) arguments in their motion to dismiss, but the Court need not exclude the Magistrate Judge's analysis from its consideration of the motion.

## V. Conclusion

For the reasons stated above, the following motions for leave to amend are GRANTED:

- MetLife and Lloyds's May 1, 2004 motion (doc. 256);
- Arizona Noteholders' May 3, 2004 motion (doc. 279);
- New York Pension Funds' June 11, 2004 motion (doc. 391);
- MetLife and Lloyds's November 3, 2004 motion (doc 510);
- ING's July 28, 2005 motion (doc. 619);
- UAT's May 31, 2005 motion (doc. 82, Case No. 2:04-cv-1090); and
- UAT's September 12, 2005 motion (doc. 137, Case No. 2:04-cv-1090).

Further, the Outside Directors' objection (doc. 651) to the Magistrate Judge's September 9, 2005 Order granting ING leave to amend is OVERRULED. The Magistrate Judge's November 14, 2005 Order granting the UAT's September 12, 2005 motion for leave to amend is hereby ADOPTED, without objection.

The Clerk of Court is directed to file the amended complaints attached to the motions.

Those Defendants who have not yet had an opportunity to

address the new amendments in briefing their motions to dismiss may submit revised motions within thirty days from the date of this Order. Responses and replies are due according to S.D Ohio Local Civ. R. 7.2(a)(2).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: December 23, 2005